### YORK v. NASH.

[71 Pac. 59.]

FORM OF CERTIFICATE REQUIRED TO BILL OF EXCEPTIONS.

1. The statutes of Oregon do not provide or require any special form of certificate to a bill of exceptions, but it must be signed by the trial judge.

EFFECT OF SIGNING BILL OF EXCEPTIONS.

2. The signing of a bill of exceptions by a trial judge is in effect a certifying that every material statement therein preceding his signature is true, except as otherwise stated.

SUFFICIENCY OF EXCEPTIONS TO INSTRUCTIONS.

3. A general or lump exception to several instructions given or refused is not an exception at all, if any one of the instructions objected to is correct, or any one of those refused is unsound.

EFFECT OF A SPECIAL CERTIFICATE.

4. A statement in the certificate to a bill of exceptions, that no means had been furnished the trial judge to compare the evidence as set out in the bill of exceptions with the evidence as taken by the stenographer, is a mere recital of a fact, and not a statement that the evidence set out is incorrect.

42 OR.—21

AMENDING PLEADING—SURPRISE.

5. Where several months elapse between the time of allowing amendments to a pleading and the date of the trial, the objection of surprise will not usually be available.

AMENDING PLEADINGS BEFORE TRIAL—OMITTING NAME OF PARTNER.

6. Under B. & C. Comp. § 102, which provides that the court may at any time before a cause is submitted allow the pleadings to be amended by striking out the name of any party or correcting a mistake in the name of a party, or a mistake in any other respect, or, when the amendment does not substantially change the cause of action or defense, by conforming the pleading to the facts proved, it is within the power of the trial court to allow a complaint to be amended before trial by striking out the name of one of the parties, and all averments as to a partnership between the plaintiffs, leaving the case to proceed with one of the original parties as plaintiff.

REAL ESTATE BROKER—RIGHT TO COMMISSION.

7. An agent who is employed to sell property under an agreement that if he finds a purchaser he shall be paid a certain sum, is entitled to his commission when he produces to the seller a purchaser who is ready, able, and willing to take the property on the terms offered, though no sale is consummated owing to the owner's refusal to sell.

EFFECT OF OPTION BY SELLER TO ANOTHER PURCHASER.

8. If an owner who has given a broker an agreement to pay him a sum for producing a purchaser, sells the property himself before the purchaser is produced, the broker is not entitled to a commission, but the owner must have either sold or made a valid contract to sell to relieve him from liability to the broker.

From Jackson: HIERO K. HANNA, Judge.

In April, 1901, the plaintiff, W. T. York, and one H. G. Wortman filed a complaint against J. T. C. Nash in the circuit court of Jackson County, in the caption of which they were designated as "H. G. Wortman & W. T. York, doing business as York & Wortman," and in the body thereof it was alleged that they were and had been copartners, doing a general real estate business, under the firm name and style of Wortman & York. The complaint further alleged that, about the month of ———, 1900, the defendant listed with them for sale certain property in the town of Medford, known as the "Nash Livery Stable," and agreed with them that, if they would find a purchaser for such property at the price of $2,600, he would pay them $100 as commission and compensation for their services in so doing; that afterward, and before the commencement of the action, and before such contract had been canceled or the property withdrawn from sale, the plaintiffs did procure a purchaser, willing and able to purchase the property, who

offered to pay $2,600 for it, and tendered the money therefor, but defendant refused to sell it to him; that for such services the defendant is indebted to the plaintiffs in the sum of $100. A summons, with the same title and caption as the complaint, was issued and served on the defendant, who in due time answered the complaint, denying the partnership between York and Wortman, and the other material allegations, and, for an affirmative defense, averring that, prior to the alleged sale by the plaintiffs, the contract or agreement between them and the defendant had been canceled, and the property withdrawn from sale. A reply was filed, putting in issue the new matter alleged in the answer, and, upon the issues thus joined, the cause came on for trial before the court and jury in September, 1901. During the introduction of evidence on behalf of the plaintiffs, it appeared that at the time the alleged cause of action accrued Wortman was not a partner of York's, and that, if a right of action existed at all on account of the matters alleged in the complaint, it was in favor of York individually, and not of a partnership composed of himself and Wortman. On motion of the plaintiffs, and against the objection of defendant, the complaint was thereupon amended by striking the name of Wortman and the words "doing business as York & Wortman" from its title, and from the body thereof all averments as to the partnership. The trial then proceeded under the complaint as amended, but resulted in a mistrial, and was continued for the term. In the following December the cause was again tried on the same pleadings, and, resulting in a verdict and judgment in favor of the plaintiff, the defendant appeals.                                    Affirmed.

For appellant there was a brief over the names of *William I. Vawter, Andrew M. Crawford,* and *Watson & Beekman,* with an oral argument by Mr. *Edw. B. Watson* and *Mr. Crawford.*

For respondent there was a brief over the names of *Austin S. Hammond* and *Lynden C. Narregan,* with an oral argument by *Mr. Hammond.*

Mr. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

Preliminary to the consideration of the merits of the appeal, it is urged that the bill of exceptions is insufficient, because not properly authenticated. Within the time allowed by law and the orders of the court, counsel for defendant prepared and submitted a bill of exceptions to the trial judge, setting out somewhat in detail what they averred to be the proceedings on the first trial, so far as they related to the amendment of the complaint, and the entire testimony and all proceedings had on the second trial. The trial judge appended thereto, and signed, the following certificate:

"The hereto attached bill of exceptions was submitted to me for approval about the date named therein, to wit, about February 14, 1902. On submitting them to Mr. Hammond, attorney for plaintiff, he objected to them on the ground that it was not a truthful and correct recital of the manner in which the exceptions were taken and allowed. I then procured from Mr. Calkins, the court stenographer, a transcript taken from his notes of the trial of said cause, showing the manner and time in which said exceptions were taken. I then returned the bill of exceptions, together with said transcript, to defendant's attorneys for correction. The bill has again been presented without any material change. The transcript of the notes of the stenographer shows that on the trial of said cause entitled 'H. G. Wortman & W. T. York vs. J. T. C. Nash,' and at the close of said trial, the court instructed the jury as to the law in the case. That at the close of the instructions Mr. Crawford, one of the defendant's attorneys, informed the court that he desired to save an exception to all of the instructions given by the court, and all the instructions asked for on part of defendant and not given by the court, and the court allowed the exceptions as asked for. The court stenographer is now attending court in Lake County, and it is impossible to procure another transcript from his notes to attach hereto at this time. I do not understand why the defendant has not attached to said bill the transcript furnished. I think I gave the instructions set out in said bill of exceptions, and declined giving some asked for by defendant. No means have been furnished me to compare the evidence as set out in the bill of exceptions with the evidence as taken by the stenographer. In justice to the

plaintiff, and in the absence of his attorney, I do not feel warranted in signing any different approval of said bill of exceptions than hereinabove set forth.

"Done at Jacksonville, Oregon, this 30th day of May, 1902."

1. It is contended that this certificate is, in effect, a disallowance of the bill of exceptions, and therefore no questions are' presented for the consideration of the appellate court. No particular form for the certificate of a trial judge to a bill of exceptions is required or provided by our statute. It is sufficient if it is authenticated by his signature.

2. When a bill of exceptions prepared by counsel is submitted to the proper judge and is signed by him, he thereby certifies as true every material statement therein preceding his signature: 3 Enc. Pl. & Pr. 458; *McCormick Mach. Co.* v. *Gray*, 114 Ind. 344 (16 N. E. 787). When, therefore, the bill of exceptions in this case was signed by the trial judge, he in effect certified as correct every material statement thereof, excepting such as might be modified by his certificate, and the only modification therein relates to the manner of taking and saving exceptions to the instructions given, and to the refusal to give those requested.

3. From the bill of exceptions, as submitted, it would seem as if an exception was saved to each instruction given or refused, while the effect of the certificate is that the exceptions were general. Exceptions of the latter class present no questions for consideration on appeal, when any one of the instructions excepted to is unobjectionable, or any one of those refused is unsound; and, as there is no pretense that such is the case here, there is no inquiry on this appeal arising out of the giving or refusing of instructions. In other respects the bill of exceptions is sufficient.

4. The statement in the certificate, that no means had been furnished the trial judge to compare the evidence as set out with that taken by the stenographer, is a mere recital of a fact, and not a statement that the evidence as actually set out is incorrect.

5. The first assignment of error is the granting of permis-

sion to the plaintiff to amend the complaint by striking from the caption Wortman's name, and from the averments all reference to the partnership between himself and York. At the time these amendments were allowed, affidavits were filed by the defendant tending to show that he was taken by surprise; but they could only be material on the question as to whether the court erroneously exercised its discretion in permitting the amendments at that time, and, as three or four months elapsed between the time they were allowed and the date of the trial resulting in the judgment from which this appeal is taken, the question as to whether the court abused its discretion in allowing the amendments becomes immaterial.

6. For the purposes of this appeal, the case stands practically as if the amendments had been made before the trial, and the only inquiry is as to the power of the trial court to permit such amendments. The statute (B. & C. Comp. § 102) provides: ''The court may, at any time before trial, in furtherance of justice, and upon such terms as may be proper, allow any pleading or proceeding to be amended by adding the name of a party, or other allegation material to the cause; and in like manner and for like reasons it may, at any time before the cause is submitted, allow such pleading or proceeding to be amended, by striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or when the amendment does not substantially change the cause of action or defense, by conforming the pleading or proceeding to the facts proved.'' This statute was intended to remedy the harsh rules of the common law, and has, therefore, always received a liberal construction. It has now become the rule to allow permission to amend, and the exception to refuse such permission (*Baldock* v. *Atwood*, 21 Or. 73, 26 Pac. 1058; *Garrison* v. *Goodale*, 23 Or. 307, 31 Pac. 709); for, as said by Mr. Chief Justice STRAHAN, in *Baldock* v. *Atwood*, ''While the parties are in court they ought to be permitted to shape their pleadings in such form as they may be advised so as to present the real questions at issue, that the same may be determined with as little delay and expense as possible. Noth-

ing is ever gained by turning a party out of court or compelling him to take a nonsuit on account of some defect in his pleading, not discovered perhaps until during the progress of the case, when an amendment could supply the defect, and the action or suit be brought to an early determination.'' Indeed, the court may, in the exercise of a sound discretion, permit a pleading to be amended before trial by introducing a new cause of action or defense, material to the subject-matter of the controversy (*Talbot* v. *Garretson,* 31 Or. 256, 49 Pac. 978), although it may not do so upon the trial (*Foste* v. *Standard Ins. Co.* 26 Or. 449, 38 Pac. 617). It is clear, therefore, that the amendments were made within the spirit of the statute, and, in our opinion, it was within the power of the trial court to allow them.

Under a statute similar to ours it has been held that, where an action was brought in the name of one partner on a cause of action belonging to a partnership, it is within the power of the court to allow an amendment by substituting the name of the firm as plaintiff: *Dixon* v. *Dixon,* 19 Iowa, 512; *Hodges* v. *Kimball,* 49 Iowa, 577 (31 Am. Rep. 158). The same rule must necessarily apply to an action brought in the name of a partnership on a cause of action belonging to one member of the firm. It is, of course, true that a cause of action in favor of one member of a firm cannot be substituted by way of amendment for one in favor of the firm, but, so long as the real party in interest is plaintiff and the essential elements of the controversy remain the same, there can be no objection to the court's allowing, in the exercise of a sound discretion, the pleadings to be amended by adding or striking out the name of a party. Such in effect was the ruling of this court in *Hume* v. *Kelly,* 28 Or. 398 (43 Pac. 380), where it was held that an amendment adding Multnomah County as plaintiff in an action brought in the name of the district attorney was within the power of the court, as it was not the substitution of one cause of action for another. So, in this case, we are of the opinion that it was within the power of the trial court to allow the complaint to be amended by striking out the name.

of one of the parties and the averments as to the partnership, and that the action could thereafter proceed in the name of the other, who is the real party in interest. There was no change, by such an amendment, of the cause of action, but the essential elements of the controversy between the parties remained the same.

7. The only remaining question arises on a motion for a nonsuit, and, as the court in deciding such a motion must assume as true every fact in favor of the plaintiff that the evidence conduces to prove (*Herbert* v. *Dufur*, 23 Or. 462, 32 Pac. 302), we shall so state the facts, although there was a controversy about some of them. In the winter or spring of 1900 the defendant listed the property referred to for sale, at the stipulated price of $2,600, with the plaintiff York and H. G. Wortman, who were then doing a real estate brokerage business as partners, and agreed to pay them $100 for their services in case they effected a sale at that figure. A few months later he concluded to go East on a visit, and withdrew the property from sale. After his return to Medford in October, he met York, who in the mean time had succeeded to the partnership business of York & Wortman, and inquired whether he had found a purchaser for his property. York said no, he had not endeavored to do so, because it had been withdrawn from sale. The defendant thereupon said to him, "If you can find me a buyer, I will hold it the same as I did before,—$2,600,—and I will give you $100 if you will sell it." York replied, "I will see what I can do." A short time afterward, substantially the same conversation was had between York and the defendant in the presence of Wortman, when defendant again repeated his offer to give York $100 if he sold the property for $2,600, and agreed to hold it at that figure himself. On Thursday, the 22d of November, 1900, and while this contract between York and the defendant was still in force, York and Wortman (who seems to have been assisting him in his business) offered to sell it for $2,600 to one Gray, who examined it with a view of purchasing. On the morning of Saturday, the 24th, Gray advised them that he would take the property at the offered

figure, and paid $100 on the contract. Nash was immediately notified, but refused to sell it to Gray, because on the previous afternoon, without any knowledge of the negotiations between York and Gray, he had bargained the property to one S. R. Lane. No sale to Lane, however, had been consummated, nor had Lane bound himself by any written or binding contract, or even agreed to take the property, the only arrangement that had been made in relation to its purchase being that on the previous evening he had inquired of defendant what he would take for the property, and defendant told him he could have it for $2,600 if he wanted it, when Lane asked for a few days in which to raise the money. On the afternoon of Saturday, the 24th, Lane, Gray, and the defendant met with York in his office, where, after discussing the question as to whether Lane or Gray was entitled to the property, it was agreed by Lane and the defendant to leave the matter to the plaintiff, and he decided in favor of Gray, as the latter had unconditionally agreed to take the property and had made a payment thereon, while Lane had not so agreed and would not so bind himself. Nash, however, neglecting or refusing to make the deed, a formal tender on behalf of Gray was made to him November 27th of the entire purchase price, which he refused to accept, and afterward conveyed the property to Lane. Upon these facts, the question arises as to whether the plaintiff earned and is entitled to his commission.

It is first insisted that the contract between the defendant and York, as interpreted by their conduct, was, not that York should procure a purchaser for the defendant, as alleged in the complaint, but that he should make an absolute sale of the property, at a certain specified price, and bind Nash to make a deed in accordance therewith, and, therefore, there is a failure of proof. The plaintiff was employed by Nash to sell the property, under an agreement that if he could find a purchaser for $2,600 he should be paid $100 for his services, and this constituted him a real estate broker, with power and authority to find a purchaser, or negotiate a sale, but not to make a contract binding upon his principal. The authority vested in a real

estate broker to sell property does not authorize him to con-
clude and execute a contract of sale, but simply empowers him
to find a purchaser, leaving the terms and conditions of the
sale subject to negotiations between his principal and such
purchaser: 16 Cent. Law J. 444; *Armstrong* v. *Lowe,* 76 Cal.
616 (18 Pac. 758), *Lindley* v. *Keim,* 54 N. J. Eq. 418 (34 Atl.
1073); *Gregg* v. *Loomis,* 22 Neb. 174 (34 N. W. 355). The
full duty of the plaintiff, therefore, under his contract with
Nash, was performed when he produced a purchaser, able,
ready, and willing to take the property upon the terms offered,
and, if Nash then refused to sell, he is entitled to his commis-
sion (*Fisk* v. *Henarie,* 13 Or. 156, 9 Pac. 322; *Kyle* v. *Rippey,*
20 Or. 446, 26 Pac. 308), unless the previous verbal agree-
ment between Nash and Lane is a defense.

8. It is admitted that the plaintiff did not have the exclusive
right to find a purchaser for the property, and therefore Nash
was at perfect liberty to sell it himself, and, if he did so prior
to the time he was informed of a sale by the plaintiff, he is not
liable to plaintiff for his commission, unless the efforts of the
latter were the procuring cause of the sale, which is not con-
tended: Mechem, Agency, § 967. That a real estate broker
finds a purchaser, able, ready, and willing to purchase upon
the terms of the seller, is not enough, under the apparent
weight of authority, to entitle him to his commission, but he
must either obtain a binding agreement to purchase the prop-
erty, or bring the parties together, so that his principal also
finds a purchaser. If, after the broker has found the pur-
chaser, the owner sells to another person, without knowledge
thereof, the broker is not entitled to his commission: *Darrow*
v. *Harlow,* 21 Wis. 306 (94 Am. Dec. 541); *Baars* v. *Hyland,*
65 Minn. 150 (67 N. W. 1148); *Gunn* v. *Bank of California,*
99 Cal. 349 (33 Pac. 1105); *Wylie* v. *Marine Nat. Bank,* 61
N. Y. 415. This doctrine, however, cannot be invoked as a
defense to this action, because defendant had not sold or made
a valid contract to sell prior to the time the purchaser secured
by the plaintiff was introduced to him and expressed not only
his willingness but his anxiety to take the property. The

arrangement between the defendant and Lane would not con-stitute a sale, within the meaning of the rule stated, nor oper-ate as a revocation of the plaintiff's authority. It was a mere verbal understanding, without any consideration, and had none of the elements of a sale or of a contract for a sale. It was nothing more than an option, subject to revocation by either party at any time, and, indeed, there was evidence tend-ing to show that the arrangement was in fact actually revoked and canceled by the agreement in York's office on the after-noon of the 24th.

The point is made that Gray was not able to purchase the property because he was insolvent; but the evidence shows that he had money enough in the bank, subject to his order, and that he could and would have paid for it if Nash had not refused to sell it to him. It follows from these views that the judgment of the court below must be affirmed, and it is so ordered.                                                     AFFIRMED.