Argued Oct. 3, decided Oct. 17, 1911, rehearing granted Jan. 16, 1912. Former opinion adhered to on rehearing March. 26, 1912.

# HENRY v. HARKER.

[118 Pac. 205: 122 Pac. 298.]

EVIDENCE—OPINIONS—LETTERS—CONSTRUCTION—INTENT.

1. While a party or witness may state his own intent, where material, in doing an act or making a declaration, it is error to permit a broker to testify as to the construction he placed on a letter from defendant; the intent of the writer being for the jury and the legal effect of the writing for the court.

BROKERS—EMPLOYMENT—CONTRACT.

2. A broker wrote the owner of certain property, asking if he would give him a short time, say 30 days, in which to effect a sale at a stated price on the usual commission basis, to which the owner replied that the broker had made a mistake as to the price, which was $5,000 more, and then added that he was not anxious to sell, but might consider a cash offer. *Held* not an acceptance of the broker's offer of his services so as to constitute a contract of employment, under the rule that, to constitute a contract, the acceptance must coincide with, and be in the same terms as, the offer.

BROKERS—SERVICES—RENDITION—TIME.

3. Where a broker failed to produce a purchaser within the time of his employment, he could not recover commission for finding a purchaser thereafter.

BROKERS—EMPLOYMENT—PERFORMANCE.

4. A broker employed to sell real estate, in order to recover commissions, must either furnish his principal a binding contract executed by an intending purchaser who is able to buy, and on whom, if he fails to buy, the principal may have recourse, or the broker must by some means bring the buyer and seller together or into communication, so they may make their own contract.

BROKERS—CONTRACT OF SALE FOR RECEIPT.

5. A broker's receipt for earnest money reciting payment of $1,000 as earnest of purchaser's intention to purchase real estate described at the agreed price of $45,000, balance payable cash on delivery of clear deed and abstract, purchaser to pay taxes, assessment and costs, and in case of failure to forfeit deposit money, signed by owner only by the broker as agent, was not an enforceable contract of sale sufficient to constitute performance of the broker's contract of employment.

BROKERS—EMPLOYMENT—CONTRACT—PERFORMANCE

6. The duty of a broker to sell real estate to bring the parties into communication, so that they can make their contract, is not performed by notice to the owner that he has sold the property or has found a purchaser, without disclosing the purchaser's identity.

BROKERS—COMPENSATION—ACTION FOR—ISSUES AND PROOF.
7. A broker having pleaded full performance of his employment
contract is bound to prove the allegations as laid.

CONTRACTS—CONSTRUCTION—QUESTIONS OF LAW.
8. The construction of a contract is a matter of law for the court.

EVIDENCE—PAROL TESTIMONY.
9. Oral evidence may be introduced to explain the language used in
a contract if it is not clear or if technical words or terms of art
are used, but not where the contract is wholly in writing, is admittedly
genuine, and contains no technical terms.

BROKERS—COMPENSATION—RIGHT TO.
10. Ordinarily a real estate broker is entitled to his commission upon
the production of a purchaser able, ready and willing to purchase at
the terms offered, and it is not always necessary that the parties be
brought face to face, it being sufficient that they are brought into com-
munication so that they may complete the sale.

BROKERS—PERFORMANCE—WAIVER.
11. The vendor's right to demand that the broker put him in
direct communication with a purchaser may be waived.

PLEADING—ADMISSIBILITY OF EVIDENCE UNDER PLEADINGS—WAIVER.
12. In an action by a broker for commissions, defendant having
pleaded the general issue, and failed to not set up way of confession
and avoidance the failure of plaintiff to place him in communication
with the purcahser, cannot object to evidence showing waiver of his
right to be placed in direct communication with the purchaser, since
plaintiff had no opportunity to plead waiver.

BROKERS—COMPENSATION—PARTIES—PERFORMANCE.
13. Where a real estate broker does not bring the vendor and pur-
chaser into direct communication, he may perform his contract by
procuring from the proposed purchaser a written offer of purchase,
which, if properly accepted by the vendor, will satisfy the statute of
frauds.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by Charles K. Henry against George
A. Harker to recover broker's commissions.

The substance of the complaint is that along about
November, 1906, the defendant employed the plaintiff
as a real estate broker to find and secure a purchaser
for certain real property, situated in Portland, for the
sum of $45,000, agreeing to pay the plaintiff the usual

and customary commission paid to real estate agents in said city; that plaintiff accepted the employment, and, in pursuance thereof, on December 15, 1906, found and procured Frank C. Baker and A. H. Maegley as purchasers for the premises at the price stipulated, and, having notified defendant thereof, the latter refused to sell, although Baker and Maegley were at all times ready and willing to purchase at that price. The defendant admits his refusal to sell the property, and admits that the plaintiff notified him that he had sold the property for $45,000, but otherwise the complaint is traversed by the denials of the answer. The defendant affirmatively alleges that, immediately upon notice of the property having been sold, he advised the plaintiff that the alleged sale was unauthorized, and that he would not make the same. This allegation of the answer was traversed by the reply. The cause was tried by the court without a jury. The court in its findings, after giving the character of the plaintiff as a real estate broker, and that the defendant was the owner of an undivided half of the property described, finds as a matter fact that no oral communications were had between the plaintiff and the defendant concerning the matters referred to in the pleadings, and that all the negotiations and transactions between them are shown to be and consist in correspondance, which so far as we deem it material, is here set down:

(1)          "Portland, Oregon, March 5, 1906.
Mr. G. A. Harker, Santa Barbara, California—Dear Sir: I have some prospective customers for First street property, and as you are the owner of the south half of lot No. 7, and the north half of lot No. 6, in block No. 3, I wish to inquire whether you will sell this property, and if so what your price would be, and also your terms. If you desire to place this property in my hands for sale on the usual commission basis, I will give it my immediate and prompt attention.
                    Respectfully yours,
                         Charles K. Henry."

(2)                    "Santa Barbara, March 10, 1906.

Mr. Charles K. Henry—Dear Sir: Yorus of March 5 at hand. In reply will say that we will sell the property you mention for $40,000.00. Terms cash. Though we are not putting the property on the market, we would be willing to have any transaction on the above terms go through your hands. My permanent address is Mill Valley, Marin County, California.

Very truly yours,<br>George A. Harker."

(3)                    "Portland, Oregon, October 9, 1906.

To Dr. George A. Harker, Mill Valley, Marin County, California—Wire best terms on gross price. Forty thousand dollars on First street property.

Charles K. Henry."

(4)                    "Portland, Oregon, October 18, 1906.

Dr. George A. Harker, Mill Valley, Marin County, California—Dear Sir: When I wired you it was my object to get terms on your place. Your price for it some time ago was $40,000.00, and I had quoted it to several people. At that time it appeared that the tenants were going to move, and buyers did not like to buy with that uncertainty before them. Would be pleased to have you state your lowest price and terms, allowing me the usual commission in the event of making the sale. Trusting to be favored with an early reply, and thanking you in advance, I am,

Respectfully yours,<br>Charles K. Henry."

(5)                    "Mill Valley, October 30, 1906.

Mr. Charles K. Henry—Dear Sir: Your letter of the 18th was side tracked in our local post office, otherwise I should have answered before. Since stating my figure on the First street property I have decided to make improvements and lease it for a number of years. As it will bring an increased rental I would not sell for $40,000.00. I consider the property a good investment at $45,000.00 and would not sell below that figure.

Very truly yours,<br>George A. Harker."

(6)         "Portland, Oregon, November 5, 1906.

Dr. George A. Harker, Mill Valley, California—Dear Sir: Just in receipt of your letter of October 30th, giving the price of $40,000.00 for your First street property. Will you kindly give me a short time, say thirty days, in which to effect the sale at the price of $40,000.00? For how long does the lease run, and at what rate of interest? Would you want all cash, or just what payments would suit you? Kindly let me know at your earliest convenience, and I will be pleased to make the sale on the usual commission basis. * * Trusting I may be favored with an early reply, I am,

Respectfully yours,
Charles K. Henry."

(7)         "Mill Valley, November 8, 1906.

Mr. Charles K. Henry—Dear Sir: Yours of the 5th at hand. I think you must have made a mistake about my price. I wrote, or it was my intention to write, $45,000.00 as the price. According to the terms of the lease I am to spend $3,000.00 on the premises. The lease is for 5 years at $300.00. I am not particularly anxious to sell, but might consider a cash offer.

Very truly yours,
George A. Harker."

(8)         "Portland, Oregon, November 14, 1906.

Dr. George A. Harker, Mill Valley, California—Dear Sir: Replying to your letter of the 8th inst., I beg to say that it will be difficult to get $45,000.00 for the property under a long time lease at that rate. The long lease bars other people from the property, and does not pay much after deducting the taxes and insurance. I doubt if I can get more than $42,500.00. However, I will make the best efforts I can, and if I get an offer near that price I will wire you. As I understand it you are asking all cash. * * Rest assured, Mr. Harker, that I will do the best I can to get $45,000.00 for your lot, although I consider it rather high. Trusting I may be able to effect the sale for you in the near future, I am,

Respectfully yours,
Charles K. Henry."

(9)    "Portland, Oregon, December 14, 1906.
Dr. Geo. A. Harker, Mill Valley, California: New increased assessment makes property hard to sell. Have tried many buyers for First street property. Best offer I get is forty-four thousand dollars cash. Wire answer at my expense.

Charles K. Henry."

(10)    "Mill Valley, California, December 14, 1906.
Mr. Charles K. Henry, 122 Third Street, Portland, Oregon: Will not sell at price mentioned.

G. A. Harker."

(11)    "Portland, Oregon, December 15, 1906.
Dr. George A. Harker, Mill Valley, California: Have sold First street property for your price, $45,000.00 cash. I rebating five hundred dollars of my commission to purchaser to effect sale. Foward abstract.

Charles K. Henry."

(12)    "Portland, Oregon, December 15, 1906.
Dr. George A. Harker, Mill Valley, California—Dear Sir: I wired you yesterday an offer of $44,000.00 for your First street property. On receipt of your reply, I finally prevailed upon the purchaser to come up to your price of $45,000.00, and in order to do so I had to rebate five hundred dollars of my commission to them. The new assessment of $37,700.00 will bring the tax up so high that there is not much margin for investment. * * I wired you to-day notifying you of the sale at your price, $45,000.00 as above, and have accepted a deposit of one thousand dollars on it, and the remainder to be paid when the abstract and the title are found perfect. * * Kindly forward your abstract that it may be brought up to date, that we may get the transaction finally closed.

Respectfully yours,
Charles K. Henry."

(13)    "Mill Valley, December 17, 1906.
Mr. Charles K. Henry—Dear Sir: I am in receipt of your telegram saying that you have a purchaser for the property at $45,000.00. Though this is a good price, considering the terms of the lease, we have decided on account of the increasing values not to sell

at present. Regretting to have put you to any trouble, I am,

Very truly yours,
George A. Harker."

(14)          "Portland, Oregon, December 20, 1906.
Dr. George A. Harker, Mill Valley, California: Your letter of seventeenth a surprise. I sold your property under written authority, in good faith, for your price, cash. Buyers will insist on delivery, and I shall insist on my commission. Wire ratification or suit will be brought immediately.          Charles K. Henry."

There is an additional letter from plaintiff to defendant under date of December 21, 1906, but as it only quotes and amplifies upon the telegram last mentioned, it is not deemed necessary to reproduce it here. The court also made a finding of fact as follows:

"(11) On December 15, 1906, the plaintiff received from said Frank C. Baker and A. H. Maegley $1,000 on account of the purchase price of said real property, and as agent for defendant signed and delivered to them a receipt for said $1,000, in words and figures as follows: 'Portland, Oregon, December 15, 1906. Received from Frank C. Baker and A. H. Maegley the sum of one thousand ($1,000.00) dollars, as part payment, and as earnest of their intention to purchase from Dr. George A. Harker, the following real property: The north half of lot numbered six (6), and south half of lot numbered seven (7), in block numbered three (3), in the city of Portland, being fifty (50) feet frontage on First street, and building thereon occupied by Martin Furniture Company. Subject. to an existing five-year lease of the Martin Furniture Company, at a monthly rental of three hundred ($300) dollars, at the agreed price of forty-five thousand dollars ($45,000.00), to be paid as follows: Forty-four thousand dollars ($44,000.00), remainder, to be paid in cash on delivery of clear deed and abstract of title. It is hereby agreed that in case of failure of title, or from any other cause, said land is not delivered free of all incumbrance by a good an sufficient deed, the said above sum of one thousand dollars ($1,000.00) is to be returned to said

Frank C. Baker and A. H. Maegley. Fifteen days allowed to examine abstract of title. It is hereby agreed that the purchaser is to pay all taxes or street improvements that may be levied against said property after date of delivery of deed. Purchaser failing to make the payments above specified the deposit money will be forfeited as stipulated damages. George A. Harker, by Charles K. Henry, Agent. Note—On completion of this sale I am to pay to Maegley and Baker five-hundred ($500.00) of my commission to effect sale.

C. K. Henry."

On the findings the court rendered judgment for the plaintiff, and the defendant appeals.          REVERSED.

For appellant there was a brief over the names of *Mr. Osgood Putnam, Messrs. Williams, Wood & Linthicum,* and *Mr. M. M. Matthiessen,* with oral arguments by *Mr. Putnam,* and *Messrs. Williams, Wood & Linthicum.*

For respondent there was a brief and oral arguments by *Messrs. Malarkey, Seabrook & Stott.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. As a preliminary matter it is our judgment that the court erred in allowing the plaintiff to testify and in finding as a fact the construction the plaintiff put upon the defendant's letter of November 8, 1906. Under the authority of *Mahon* v. *Rankin,* 54 Or. 328 (102 Pac. 608: 103 Pac. 53), a party or witness may state his own intent, where the same is material, in doing an act or making a declaration, but he cannot testify as to the intent of another or construe the legal effect of the other's writing. The intent of the latter is a question for the jury or other trier of the facts, and the legal effect of the writing is for the court to determine. The contract in form as alleged in the complaint has been denied by the answer, and it is incumbent upon

us to determine whether the letters quoted in the findings prove or constitute such a contract. In the first letter the plaintiff states that he has some prospective customers for First street property, and inquires whether the defendant will sell, and, if so, upon what terms. The latter might well construe this language as the negotiation of a purchaser's broker, and treat the plaintiff as the agent of some undisclosed buyer. It is the plain import of plaintiff's language in the opening paragraph of the communication.

It is true that the plaintiff states further, to the defendant that, "if you desire to place this property in my hands for sale on the usual commission basis, I will give it my immediate and prompt attention." The defendant answered this letter, giving his terms as $40,000 cash, which would be an apt and sufficient response to the purchaser's broker. To the suggestion about putting the property into the plaintiff hands for sale on the usual commission, the defendant answered, in effect, that they were not putting the property on the market. This would certainly seem to imply that he declined the offer of plaintiff to take the property for sale. Indeed, the plaintiff himself does not count upon this as a contract of employment, for he alleges in his complaint that the agreement was made in the month of November, 1906. That the plaintiff considered the terms of the proposed transaction still open is shown by his letter of October 18, 1906, in which he asks the defendant to state his lowest price and terms, allowing the usual commission in the event of making the sale. The negotiations between the plaintiff and the defendant being thus open, the defendant had a right to decline to sell for $40,000, and stated in his letter of October 30th: "I consider the property a good investment at $45,000.00, and would not sell below that figure." By a fair construction such language does not amount to fixing a price .

at which he would sell the property, but only as establishing a minimum below which he would not sell. Bearing in mind the allegations of the complaint that the contract was made in November, so far as offer and acceptance are concerned, the pleaded offer, which he claims was accepted, must be found in his letter of November 5, 1906, in the following language:

"Will you kindly give me a short time, say thirty days, in which to effect the sale at the price of $40,000.00? Would you want all cash, or just what payments would suit you? Kindly let me know at your earliest convenience, and I will be pleased to make the sale on the usual commission basis."

The defendant's letter, of November 8th, in response to the plaintiff's last quoted, is a clear refusal to accept the terms offered. In addition to that, he says: "I am not particularly anxious to sell, but might consider a cash offer." This language cannot be construed into an acceptance of plaintiff's offer so as to make a contract of employment between the parties. The 30 days would expire by the terms of his own letter on December 5, 1906. It is elementary that, to constitute a contract based upon offer and acceptance, the acceptance must coincide with and be in the same terms as the offer, otherwise the contract is not complete, and all that passes between the parties can be deemed only as negotiation. 9 Cyc. 265; Clark, Contracts, § 21.

3. But if we concede that the defendant accepted the offer of November 5, 1906, made by the plaintiff, including the terms of thirty days in which to effect the sale at the price named, what is the result? The plaintiff has not performed his part of the contract, for his earliest mention of finding a purchaser at any price is in his telegram of December 14, 1906. The plaintiff is bound by the terms of his own offer, and, not having found a purchaser within the time stipulated, he cannot

recover. *Hardy* v. *Sheedy,* 58 Or. 195 (113 Pac. 1133).

4. There is yet another obstacle to prevent the plaintiff from recovering in this action, even if his offer to take the property to sell on commission had been accepted so as to form a contract. He alleges that he was employed to find and procure a purchaser, and that he performed the contract, all of which is denied, and so he is put upon the proof of his allegation. In performance of such a contract on his part, the seller's real estate broker must do one of two things before he can recover his commission from his employer. He must furnish his principal a binding contract executed by an intending purchaser who is able to buy and upon whom, if he fails to buy, the principal may have recourse; or the broker must by some means bring the buyer and seller together or into communication with each other so they may themselves make the contract and conclude the sale. *York* v. *Nash,* 42 Or. 321, 330 (71 Pac. 59) ; *Hardy* v. *Sheedy,* 58 Or. 195 (113 Pac. 1133). It is not pretended that the plaintiff secured from Baker and Maegley any contract which the defendant could enforce against them.

5. The receipt quoted in the eleventh finding of fact is not such a contract, and it does not appear that even this receipt was ever exhibited to the defendant. Hence there is nothing to satisfy the first alternative allowed to the agent in performing his contract to procure a purchaser.

6. The latter alternative is not satisfied by the agent informing his principal that he has sold the property or has found a purchaser without disclosing the identity of the intending purchaser, for, under such circumstances, the owner is authorized to conclude that the broker is himself speculating on the property in violation of his duty. *Hayden* v. *Grillo,* 35 Mo. App. 647; *Baars* v. *Hyland,* 65 Minn. 150 (67 N. W. 1148) ; *Burnett*

v. *Edling,* 19 Tex. Civ. App. 711 (48 S. W. 775) ; *Gerding* v. *Haskin,* 141 N. Y. 514 (36 N. E. 601).

In the present case none of the correspondence, which, according to the findings, constitutes the entire negotiations, contains any intimation whatever about the identity of the proposed purchasers, and, for all that appears, they are unknown to the defendant even to this day. It is possible that if the complaint were drawn upon the theory that the defendant had broken the contract resulting in damage to the plaintiff, or that full performance by the plaintiff had been waived by the defendant, a different case would have been presented.

7. But, having pleaded full performance, the plaintiff is bound by the allegation as thus cast, must prove it as laid, and until he discloses to the defendant the identity of the intending purchaser, either by a contract signed by the buyer or bringing him to the notice of the seller in some way, the agent's contract is not performed.

The judgment of the court below is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.                    REVERSED.

Decided March 26, 1912.

ON REHEARING.

[122 Pac. 298.]

A rehearing was granted in this case January 16, reargued March 7, and decided March 26, 1912.

FORMER OPINION ADHEARED TO.

For appellant there was a brief on rehearing over the names of *Mr. M. M. Matthiessen* and *Messrs. Williams, Wood & Linthicum,* with an oral argument by *Mr. Matthiessen.*

For respondent there was a brief on rehearing over the names of *Messrs. Malarky, Seabrook & Stott,* with, an oral argument by *Mr. Dan J. Malarkey.*

For the Portland Realty Board, on rehearing, there was a brief over the names of *Messrs. King & Saxton,* with an oral argument by *Mr. Will R. King.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

In respondent's able brief upon the rehearing he aptly compares negotiations by letter to conversations between the parties, and invokes the same rules of construction. We will treat the correspondence in this case as a written conversation between the parties and see if from that a contract arose, and, if so, what were its terms.

We may first premise that, in order for plaintiff to recover in this case, he must show that defendant put the property in his hands for sale upon commission for a definite period or until such authority should be revoked, and that within the time given him he produced a purchaser able, ready, and willing to buy at the price specified by defendant and that defendant declined to sell.

Let us now strip the correspondence of its verbiage, and see if such a contract can be made out of it: Henry to Harker, March 5, 1906: "Will you sell property on First street (describing it.) If so, what is your price. Will you place it in my hands on the usual commission basis." Harker replied March 10th: "Will sell the property for $40,000 cash. Am not putting it on the market, but would be willing that any transaction on these terms go through your hands." Henry to Harker, October 9th: "Wire best terms on gross price $40,000 on First street property." No answer. Henry to Harker, October 18th: "When I wired it was to get terms on your place. Some time ago you asked $40,000. State your lowest price and terms allowing me the usual commission." Harker to Henry, October 30th: "Have decided to make improvements and lease the property. I would not sell for $40,000. Would not sell

below $45,000." Henry to Harker, November 5, 1906: "Just received your letter giving price of $40,000. Will you give me a short time, say 30 days, in which to sell at $40,000, with usual commission." Harker to Henry, November 8th: "You are mistaken about my price. I said or meant to say $45,000. I am not anxious to sell, but might consider a cash offer." Henry to Harker, November 14th: "It will be difficult to get $45,000. I doubt if I can get more than $42,500. Will do the best I can and if I get an offer I will wire you. I consider your price high." Henry to Harker, December 14th "Best offer I can get is $44,000 cash." Harker to Henry, December 14th: "Will not sell at that price." Henry to Harker, December 15th: "Have sold your First street property at you price, 45,000." Harker to Henry: "45,000 is a good price but have decided not to sell on account of increasing values."

The correspondence is given practically in full in the original opinion, but the foregoing presents all its material features. We do not have presented to us the case of a property owner anxious to sell and seeking a broker to act for him, but rather an active and enterprising broker seeking to induce an indifferent owner to allow him to sell his property on commission. It is a part of the recent history of Portland that plaintiff's activity and advertising ability has added greatly to the increase in real estate values in that city, and no doubt it is the truth, as he observes in one of his letters to plaintiff, that "these efforts have greatly contributed to the increased value of property on First street including yours," but we are unable to construe this correspondence into a binding contract on the part of defendant. The final conclusion of the whole matter is found in the letters of October 30th and November 8th, and these, construed together, amount to this: "I would not sell below $45,000, but might consider a cash offer

Sig. 10

of $45,000." This simply amounts to saying: "If you should bring me a customer who is ready and willing to pay $45,000, I might take it or I might not." Defendant was plainly averse to tying himself up for any length of time by a positive contract, but plaintiff evidently thought that a price of $45,000 was so high that defendant would not refuse it, if a customer was found, and, acting on this presumption, made this "gentleman's arrangement" with defendant who failed to act as such when the purchaser was procured.

8, 9. It is claimed that this contract is ambiguous, and that, therefore, its construction is left as a question of fact, and that, the court sitting as a jury having found the fact for the plaintiff, such finding is conclusive upon this court. The construction of a contract is always a matter of law for the court. If technical words or terms of art or local phrases not in common use are introduced, or if it is uncertain to what person or what thing a writing refers, oral evidence may be introduced to explain the language used, or if the language itself is not clear, and it can be shown that both parties placed a particular interpretation upon it and acted upon that interpretation, evidence showing such interpretation may be admitted. But when, as in this case, the contract consists wholly of a writing or series of writings all admitted to be genuine, and containing no technical terms, the construction of the writings becomes a matter of pure law for the court. *Hutchinson* v. *Bowler,* 5 M. & W. 535; *Goddard* v. *Foster,* 17 Wall. 123 (21 L. Ed. 589). And this rule is even applied to oral contracts where their terms are not disputed. *Globe Works* v. *Wright,* 106 Mass. 207; *American Towing & L. Co.* v. *Baker-Whitely Coal Co.,* 111 Md. 504 (75 Atl. 341.

We therefore hold that as a matter of law the letters submitted in evidence fail to show promise on the part

of defendant to accept a purchaser for the sum of $45,000, but that, on the contrary, they indicate an intent on his part to retain the option to refuse such an offer if when it should be made he had changed his mind in regard to making a sale of the property. While this in effect disposes of the case, there are certain expressions in our former opinion that seem to have been misapprehended and caused needless alarm to persons engaged in the business of dealing in real estate in the city of Portland, and a brief has been filed "*amicus curiae*" asking for a more definite expression of our views as to when a broker has earned a commission.

10. It may be premised that the employment of a real estate broker is not strictly a contract for the sale of property but for services. Ordinarily his contract is performed when he has produced a purchaser able, ready, and willing to purchase at the terms offered. If he does this, and places the seller in a position to deal with the person whom he has induced to become a prospective buyer his labor is ended and his fee earned. And by producing a purchaser it is not always necessary that the parties should be brought face to face, but it is sufficient if they are brought into communication so that they may complete the sale.

11. When the purchaser is found, the vendor is entitled to know who he is and be placed in direct communication with him, but it stands to reason that he may waive this if he does not insist upon it, and transact all the business through the broker.

12. In the case at bar defendant did not ask the name of the parties with whom plaintiff was dealing, and it is plain that he did not care who they were, and, so far as that branch of the case is concerned, he should be held to have waived an introduction to the purchaser, and, having pleaded the general issue, he has left the

plaintiff no opportunity to plead his waiver of this term of the contract if such pleading were necessary, and cannot now object to evidence tending to show such waiver. *Hayes* v. *Va. Mutual Protection Ass'n,* 76 Va. 226. And, in fact, no objection was made to the evidence on the ground of variance.

13. On the other hand, if he does not bring vendor and purchaser into communication with each other, he may take the alternative of procuring from the proposed purchaser an offer in writing to purchase the land, which, if properly accepted by the vendor, would be a contract obligatory upon both buyer and seller within the statute of frauds, and this would be one way in which the broker could perform his contract with the vendor. This is the doctrine in *York* v. *Nash,* 42 Or. 321 (71 Pac. 59), and other like cases when rightly understood.

These have always been the holdings of this court as they have been of nearly every court in the Union, and are in entire accord with the opinion heretofore rendered in this case, as here explained. We adhere to our former opinion.

REVERSED: ON REHEARING FORMER OPINION ADHERED TO.