Argued at Pendleton May 2, reversed and remanded June 8, 1921.

# ANDERSON v. WALLOWA NATIONAL BANK et al.

(198 Pac. 560.)

**Brokers—Broker Entitled as Compensation to Receive Excess Beyond Fixed Amount cannot Recover Without Showing Completed Cash Sale.**

1. Where a contract provided that, if plaintiff should secure a purchaser, he would be entitled to all sums in excess of a certain amount, plaintiff, to recover, must show either that he consummated the contract, and by effecting a completed cash sale created a fund out of which he is to be paid, unless he was prevented from consummating the same by the acts of defendant owners.

**Contracts—No Recovery on Contract Without Performance or Tender of Performance.**

2. One who would recover on a contract must first show performance on his part or a valid tender of performance which was rejected by the opposite party.

**Brokers—Tender Need not be Made Where It Would be Vain.**

3. No one is required to do a vain thing, and so a tender is unnecessary where it is apparent it would be refused, as in the case of defendant land owners who notified a purchaser procured by plaintiff broker that no sale could be consummated until after the expiration of the time during which the broker was authorized to sell.

**Brokers—In Case of Executory Contract of Sale, Unconditional Tender is Unnecessary to Charge Owners With Liability to Broker for Procuring Purchaser.**

4. An unconditional tender is not necessary, in case of an executory contract of sale, where payment and delivery of deed are to be performed contemporaneously, and hence an unconditional tender in specie as in case of a debt is not necessary to charge the owners with liability to a broker who procured a purchaser ready, able, and willing to buy.

**Brokers—Broker must Furnish Binding Contract Executed by Purchaser or Bring Buyer and Seller Together.**

5. To entitle a broker to recover commissions from his employer, he must either furnish his principal with a binding contract executed by the purchaser able to buy, and on whom, if he fails to buy, the seller may have recourse, or he must bring the purchaser and seller together or in communication so that they themselves may contract and conclude the sale.

**Brokers—Oral Agreement to Purchase Land will not Entitle Broker to Recover Commission.**

6. A broker cannot recover commissions merely because he entered into an oral agreement with a prospective purchaser; for such agreement does not satisfy the statute of frauds (Or. L., § 808), and would be unenforceable by the owner.

**Brokers—Statements Made by Prospective Purchaser to Broker Admissible in Evidence.**

7. Where plaintiff conveyed land to defendant bank under an agreement that, if he could sell it within a stipulated time, he should receive all of the purchase price in excess of a fixed sum, and plaintiff interested a purchaser, but did not enter into a binding contract with him, statements made by the prospective purchaser to plaintiff, being in effect statements made to the bank, were admissible in an action brought against the bank which plaintiff claimed deprived him of his commissions by informing the pros-

---

5. When broker becomes entitled to commission, see notes in 28 Am. St. Rep. 546; 139 Am. St. Rep. 225.

pective purchaser that no sale could be made until the termination of the period of plaintiff's authority.

**Brokers—Where No Binding Contract was Made, Broker, to Recover, must Show That He Produced Purchaser Ready, Able and Willing.**

8. In an action by a broker who claimed compensation, though no contract was made, he must show that he produced a purchaser ready, able and willing to buy, but that the vendor refused to sell.

**Trial—Where No Binding Contract was Made, Evidence of Declarations by Purchaser to Broker and Principal Should be Limited to Issue Whether Purchaser was Produced.**

9. Where plaintiff, who had an agency to sell land within a given period and receive all above a fixed sum as commission, asserted that he produced a purchaser rea<sup>2</sup>y, able and willing, but that defendant refused to consummate the sale and deprived him of his commission, evidence of declarations by the purchaser to plaintiff and to defendants' officers, while competent on the question of whether the purchaser was ready, able and willing to purchase, should be limited by instructions to that issue.

**Brokers—Sentiment of Bank Directors not Communicated to Broker or His Purchaser Inadmissible in Suit for Compensation.**

10. In an action by a broker who claimed that he produced a purchaser, but that defendant bank would not sell, etc., evidence that some of the directors suggested a sale on more favorable terms, not communicated to either plaintiff or the purchaser, was inadmissible.

**Trial—Instruction as to Right of Broker to Compensation Held to Invade Province of Jury.**

11. Where plaintiff, who had a limited agency for the sale of land, claimed that he produced a purchaser, ready, able and willing, but that defendant refused to sell, an instruction stating that, if the prospective purchaser expressed his willingness and readiness to purchase under the terms of an oral contract made with plaintiff, and was able to make the payments required, plaintiff was entitled to recover if the failure to consummate was due to the evasive acts of the defendant, was improper as invading the province of the jury by making a mere verbal expression of willingness conclusive, although the purchaser after expiration of plaintiff's agency offered very much less for the property.

**Brokers—Broker not Entitled to Interest on Recovery.**

12. A broker who claimed to have produced a purchaser ready, able and willing to buy *held* not entitled to interest on recovery.

**Appeal and Error — Instruction Following Stipulation as to Recovery Harmless.**

13. Where the parties entered into a stipulation which erroneously allowed recovery of interest, an instruction authorizing such recovery is harmless, being, at the most, invited error.

**Brokers—Instruction as to Ability of Purchaser Held Misleading.**

14. In an action by a broker who claimed compensation on the theory that he produced a purchaser ready, able and willing, an instruction stating that it was incumbent on plaintiff to prove that he had produced such purchaser, and that, if defendants represented to the purchaser they would sell after the expiration of the period of the broker's authority on terms different from those on which the broker was authorized to sell, defendants would be deemed to have accepted the purchaser's ability to pay as satisfactory, was misleading; for the mere fact that defendants might be willing to deal with the purchaser at some other time on other terms would not imply an admission that at the time produced he had ability to pay.

**Trial—Instruction on Ability of Purchaser Procured by Broker to Pay Invasion of Province of Jury.**

15. Where plaintiff claimed commission on the theory that he produced a purchaser ready, able and willing to buy, but defendants declined to sell, an instruction that it was incumbent on plaintiff to show that the purchaser was able to pay in the manner provided for in the contract, but, if the purchaser had money in bank or arrangements with a bank whereby his check would be honored for an amount sufficient to consummate the deal, he was able to purchase, was improper, invading the province of the jury, and misleading as indicating that defendants would be bound to accept the check in lieu of the cash.

**Brokers—Where Sale is to be for Cash, Broker must Show Ability to Pay It, and Principal is not in Default for not Accepting Checks.**

16. Where broker was authorized to sell for cash, he must show ability of purchaser to pay cash, and the mere fact that the purchaser had arrangements with a bank to honor his checks is not sufficient to entitle the broker to recover from the principal, who failed to consummate the deal, for the principal could not be compelled to accept such checks.

**Brokers—Evidence Held to Justify Request to Instruct as to Producing Purchaser in Compliance With Contract.**

17. In a suit for commission by a broker claiming to have produced a purchaser to whom defendants refused to sell, evidence of negotiations between the purchaser and a defendant bank as to extending credit to him in case he purchased, justified a request to instruct that, if the purchaser asked defendants to carry a part of the amount owing, even if they were willing to wait for a part of the money, this was not a compliance with the contract to make a sale for cash, and did not show the purchaser was ready, able and willing to purchase on the terms specified.

**Trial—Court must Charge on All Theories Supported by Evidence.**

18. It is the duty of the court in presenting the law of the case to instruct on the law applicable to all theories of the case that are supported by any competent evidence.

---

14. What constitutes ability to pay within rule as to broker's right to commissions, see note in 1 A. L. R. 528.

Brokers—Where Broker Claimed to have Produced Purchaser, Latter
  may Testify as to Reason Why He Did not Purchase.

19. In an action by a broker claiming to have produced a pur-
chaser ready, able and willing to buy, but to whom defendants
declined to sell, the purchaser may testify to a breach of the
contract or refusal to perform by defendants as a reason why he did
not purchase.

From Wallowa: J. W. KNOWLES, Judge.

In Banc.

Although the action is against two defendants, the
Wallowa National Bank and the Enterprise Mercan-
tile & Milling Company, for convenience the defend-
ants will be alluded to either as such parties or as
"the bank." A *résumé* of the complaint shows that
about November 8, 1915, the plaintiff conveyed to the
defendants 1,840 acres of land in Wallowa County.
On the same day the plaintiff and the defendants
made an agreement in writing whereby the plaintiff
was appointed the exclusive agent of the latter from
that date until June 1, 1916, to sell the land, for
which the defendants were to receive $13,887.96, with
interest at 10 per cent per annum from November 8,
1915, to the date of sale. There were mortgages on
the land concerning which it was provided that the
buyer should assume and agree to pay them, and that
the plaintiff should receive from the defendants as
commission for making such sale any excess of the
purchase price obtained over the amount of cash to
be paid to the defendants upon their delivering a deed
of the premises. The complaint further says that on
May 29, 1916, the plaintiff produced W. J. Morrow as
a buyer of the land and, acting under the authority of
the contract, entered into an agreement with Morrow
whereby the plaintiff promised to sell to Morrow for
and on behalf of the defendants, and Morrow agreed
to buy the land at the price of $32,500, paying

$13,887.96, with interest at 10 per cent from November 8, 1915, to May 30, 1916; and that the purchaser should assume and agree to pay all the other mortgage indebtedness referred to, and further, to pay the difference between $32,500 and the aggregate of claims against the land, direct to the plaintiff. It is then alleged that "the said W. J. Morrow was then and there able, ready and willing to pay the purchase price for said lands and premises then and there agreed upon, and in accordance with the terms specified in the agreement hereinbefore mentioned between the plaintiff herein and defendants."

The plaintiff's pleading narrates that on or about May 30, 1916, the defendants informed Morrow that the plaintiff had no right to sell the property, to offer the same for sale or to procure a buyer therefor, and refused to make a deed to Morrow, but told him that after June 1, 1916, they would be in a position to deal directly with him and would sell him the property for a less sum than that agreed upon between Morrow and the plaintiff. Claiming that if the contract had been performed, the plaintiff would have received the sum of $9,648.81, the plaintiff prays for judgment against the defendants, that they be required to pay into court the amount due on one of the mortgages, or to satisfy it of record, and for the money mentioned, together with interest thereon at the rate of 6 per cent from May 30, 1916, and for costs.

The answer admits the corporate character of the defendants and the delivery of the plaintiff's deed to the defendants, but denies all other allegations except as set forth in the answer. The defendants say that on November 8, 1915, they made and signed a writing appointing the plaintiff their agent to sell the land at any time on or before June 1, 1916; that under that

contract they were to receive $13,887.96, with interest at 10 per cent per annum from November 8, 1915, to the date of the deed, all to be paid in cash on delivery of that instrument. It also recites the mortgages mentioned in the complaint and avows that the deed should be made subject to those mortgages, and mentions certain other conditions about the right of defendants to improve the land and the right of the plaintiff to remain in possession. It is further averred that the contract provided that if the defendants should pay the mortgages or interest, or taxes on the land, the amounts so paid should be returned to them with interest at the rate of 10 per cent per annum in cash. They say that they complied with all the terms of the contract; and that during the life of the contract they did not sell the land or any part thereof, set out the amounts of money they paid to discharge encumbrances on the land and for which the property was liable, aver their willingness to convey the land, but say that the plaintiff did not produce any purchaser ready, able or willing to buy the same.

The reply is in these words:

"Denies each and every material allegation therein contained not hereinbefore specially admitted in the complaint."

A jury trial resulted in a verdict in favor of the plaintiff for $8,025.03. From the ensuing judgment the defendants appeal.   REVERSED AND REMANDED.

For appellants there was an oral argument by *Mr. A. S. Cooley.*

For respondent there was a brief over the names of *Mr. A. Fairchild* and *Messrs. Morgan & Boom,* with an oral argument by *Mr. A. L. Morgan.*

BURNETT, C. J.—In order more clearly to understand the case, an epitome of the testimony will be convenient. The admitted contract was introduced in evidence without objection. It provides that the plaintiff

"may sell the lands at any time on or before June 1, 1916, and upon the said Edwin A. Anderson's securing a purchaser for said lands said corporations agree to convey said lands to such purchaser by proper deed. But the agency of the said Edwin A. Anderson as herein made, and his right to sell said lands, shall expire on said first day of June, 1916."

As recited in the answer there are sundry provisions about the encumbrances upon the land, and the right of the bank to be reimbursed for such sums as it would pay in discharging those obligations and the taxes. The contract concludes with these provisions:

"The said Edwin A. Anderson is hereby given the exclusive right to sell said lands during the life of this contract, and during the life thereof said corporations, or either of them shall not sell said lands, nor any part thereof.

"If said lands are sold by the said Edwin A. Anderson, then the purchaser thereof shall assume said mortgages. And the said Edwin A. Anderson shall receive as his commission for sale of the same any sum or sums received for said lands over and above the sums herein required to be paid to said corporations upon the delivery of such deed."

As shown by the testimony, there never has been any dispute about the terms of the agency contract given to Anderson.

There is testimony to the effect that Morrow came from eastern Washington into Wallowa County in quest of land, having been advised by one of Anderson's advertisements that this property was for sale. He spent three days in examining it and, as he says,

asked Anderson what would be the least he would take for the land, when the latter told him $32,500 and Morrow agreed orally to pay that amount. They arranged then to meet at Enterprise the next day, May 30th, to compute the amount due to the bank under the contract and to close the transaction. Morrow's testimony is to the effect that on arriving at Enterprise, where the bank was situated, on the evening of May 29th in advance of Anderson, he met two of the directors of the bank, who were also officers of the other defendant. One of them, on learning his mission there, told Morrow that he could not get a deed from Anderson and that the latter had no right to sell the land, and nothing could be done about the matter until after June 1st. They invited him, he says, to meet the directors of the bank in the evening to talk over the matter, and according to Morrow's testimony it was there reiterated that Anderson could not make the deed and that the bank could not do anything until after June 1st. The postponement of the performance and the declaration of the bank that nothing could be done until after the first of June are also narrated by the witness Nessley, a real estate agent who at one time had the same land for sale. Morrow says he told the directors of the bank at the meeting in the evening that he had agreed with Anderson about the purchase price and the amount thereof and that he was ready to make the deal. He testified concerning the amount of property he had and said that if necessary he could have paid the whole purchase price of $32,500 in cash.

During the trial, according to the record, the parties stipulated about the amounts due on the several encumbrances and agreed that "on the twenty-ninth day of May, 1916, the total amount owing by plaintiff

to defendants, together with other indebtedness existing against this land and which should be paid or assumed by any purchaser was the aggregate amount of $24,474.97,'' and that if the plaintiff made a sale of the land as alleged at the price of $32,500, and if he should recover in the action, the amount to be recovered is $8,025.03, with interest thereon at the rate of 6 per cent per annum from May 29, 1916, to the date of the verdict.

It is admitted by the plaintiff that on his arrival at Enterprise on the morning of May 30th he did not talk with any of the officers of the defendants, did not ask them to make a deed and did not go near them. The testimony further shows that the bank officers told Morrow that they wanted to get their money out of the property. Morrow left Enterprise May 30th and did not return until about June 20th, at which time the bank offered him the land for $25,000, approximately the amount of its claim and encumbrances against the property, and he made a counter offer of only $24,000. There was some testimony that at different later interviews the bank offered to extend him credit, if he would make a payment of $4,000 or $5,000 down, and that he told defendants if he had any dealings or needed any money, he would get it at another bank, where he was acquainted. The testimony indicates that there were some negotiations about a possible sale on credit to Morrow. The officers of the defendants strongly deny telling Morrow that nothing could be done until after June 1st, and say they told him that until after June 1st they could not make any sale without the consent of Anderson, who had exclusive power to effect the sale. They offered to show that in the absence of both Morrow and Anderson the

directors held a meeting at which there was considerable talk of discounting their claim of $24,474.97 and selling the property at a less figure than that.

It well may be doubted whether the reply, denying as it does the "material" allegations of the answer, raises any issue. There is authority for saying that to deny the "material" allegations is but to raise a conclusion of law that inasmuch as the pleader has not pointed out what he deems to be material, the denial in that form is insufficient to raise a question of fact. In view of the disposition to be made of this case, however, it is not necessary to elaborate this point, as the defect may be remedied by an amendment of the reply.

1-4. We must bear in mind at the outset that Anderson was obligated to effect a sale of the land and that only out of the excess of the purchase price received over the amount of the liens against the property was he to receive his compensation. Before he can collect broker's fee under such a contract he must accomplish what he undertook to do, and by effecting a completed cash sale create a fund out of which he is to be paid, unless the defendants prevented the accomplishment of that purpose. His pleading shows an agreement on the part of Morrow to pay direct to him that surplus. He sues not for damages for breach of the contract of employment but as for a balance due upon a performed contract. His position is analogous to that of a buyer in an executory contract for the purchase of land. It is a familiar principle that he who would recover on a contract must first show performance on his part, or a valid tender of performance which is rejected by the other party. In *Catlin* v. *Jones,* 52 Or. 337 (97 Pac.

100 Or.—44

546), in speaking of an executory contract, Mr. Justice EAKIN said:

"If both parties are present, and neither of them tenders performance, then both are in default, and neither of them can sue the other for breach; so that, if either party would enforce the contract, or seek to recover damages for nonperformance by the other, he must do more than show his default. He must also show performance on his own part or a tender to perform."

Having entered upon the process of effecting an actual sale of the property, from the realized purchase price of which he was to receive his remuneration, it is the duty of the plaintiff to carry out that process to its ultimate completion, unless prevented by the defendants. When the defendants offered the land for sale, although the plaintiff was not bound to buy it himself, yet if he would earn his fee he must produce someone to act as a purchaser or, in other words, to assume the role of vendee under an executory contract for the sale of real property. This would include the payment of the money concurrently with the execution of the deed. The payment or offer to pay is excused, however, if the defendants refused to receive the money or refused in advance to perform the contract. There was testimony, as already intimated, contested it is true by the defendants, to the effect that they told Morrow when he announced to them that he was ready to close the deal, that nothing could be done until after June 1st. This was sufficient to dispense with an actual offer to pay the money. No one is required to do a vain thing, and, if the defendants would not do anything until after June 1st, the tender was excused: *Cheney* v. *Libby,* 134 U. S. 68 (33 L. Ed. 818, 10 Sup. Ct. Rep. 498, see, also, Rose's U. S. Notes); *McPherson* v. *Fargo,* 10

S. D. 611 (74 N. W. 1057, 66 Am. St. Rep. 723); *McLeod* v. *Morrison,* 66 Wash. 683 (120 Pac. 528, 38 L. R. A. (N. S.) 783); *Kuhlman* v. *Wieben,* 129 Iowa, 188 (105 N. W. 455, 2 L. R. A. (N. S.) 666). The case of an executory contract containing concurrent covenants to be performed by the parties is to be distinguished, on the subject of tender, from a case where one owes an ascertained debt to another. In the latter case, the tender must consist in the actual production of the money due and offer of it to the creditor to whom it is due. In *Lewis* v. *Craft,* 39 Or. 305 (64 Pac. 809), it was held that:

"Under a contract of sale by which goods are to be paid for upon delivery, the seller has complied with his part of the contract when he has the required goods ready at the time and place agreed upon and offers to deliver them upon payment of the price. It is not necessary to tender them unconditionally."

The principle is the same as in the instant case. Payment of the money and delivery of the deed were concurrent acts to be performed simultaneously. Unconditional tender by either party is not required in any event, and affirmative offer to perform is excused on behalf of either party, if the other has already refused to comply with the contract.

The distinction between the tender of the amount due upon a debt and offer of performance of an executory contract containing mutual covenants is pointed out in *Smith* v. *Lewis,* 26 Conn. 110. The controversy there was over a contract for the conveyance of realty and other property. The court said:

"Some misapprehension or confusion appears to have arisen from the mode of expression used in the books in treating of the necessity of a tender or offer by the parties, as applicable to the case of mutual and concurrent promises. The word 'tender,' as used

in such a connection, does not mean the same kind of offer as when it is used with reference to the payment or offer to pay an ordinary debt due in money, where the money is offered to a creditor who is entitled to receive it and nothing further remains to be done, but the transaction is completed and ended; but it only means a readiness and willingness, accompanied with an ability on the part of one of the parties, to do the acts which the agreement requires him to perform, provided the other will concurrently do the things which he is required by it to do, and a notice by the former to the latter of such readiness. Such readiness, ability and notice are sufficient evidence of, and indeed constitute and imply, an offer or tender in the sense in which those terms are used in reference to the kind of agreements which we are now considering. It is not an absolute, unconditional offer to do or transfer anything at all events, but it is in its nature conditional only, and dependent on, and to be performed only in case of, the readiness of the other party to perform his part of the agreement.''

In brief, as to the subject of nonsuit, the plaintiff was excused from further prosecution of the process of effecting a completed sale of the property by the fact which the jury was authorized to find from the evidence, that the defendants refused to execute a deed to the land until after June 1st.

5, 6. We pass now to the assignments of error appearing in the abstract. When the plaintiff was testifying as a witness in his own behalf he narrated the conversation with Morrow, the proposed purchaser, on the premises in question, on May 29th, to the effect that the latter asked the witness what was the least he would take for the land involved, and the question was propounded: ''And what did you tell him?'' The objection was made that the question was incompetent, hearsay and not binding upon the defendants, unless the plaintiff ''took a contract binding the pur-

chaser to take the land at that price, or produced a purchaser to the defendants at that price." The objection was overruled and the witness answered: "I told him $32,500." The witness was then asked: "And what did he say?" The same objection was made and overruled, and the action of the court thereon is assigned as error. In *York* v. *Nash,* 42 Or. 321 (71 Pac. 59); *Hardy* v. *Sheedy,* 58 Or. 195 (113 Pac. 1133); *Henry* v. *Harker,* 61 Or. 276 (118 Pac. 205, 122 Pac. 298); *Grindstaff* v. *Merchants' Investment & Trust Co.,* 61 Or. 310 (122 Pac. 46), and *Taylor* v. *Peterson,* 76 Or. 77 (147 Pac. 520), the doctrine is laid down that in the performance of a contract of a broker to secure the sale of land he must do one of two things before he can recover his commission from his employer. The first is, he may furnish his principal a binding contract executed by an intending purchaser who is able to buy and upon whom, if he fails to buy, the principal may have recourse. Or the broker must bring the buyer and seller together or in communication with each other, so that they may themselves make the contract and conclude the sale. The plaintiff has pleaded both these alternatives and his pleading is traversed. If he would prove that he had secured a binding contract, it must comply with the statute of frauds, which as formulated in Section 808, Or. L., declares that the agreement is void and no evidence of its contents shall be received when it is "for the leasing for a longer period than one year, or for the sale of real property or any interest therein."

7-9. The verbal conversation between Anderson and Morrow on the ranch was nothing more than an oral agreement respecting the terms of the sale of the real property. It could not have been enforced

against either party. The bank could not have taken advantage of it and compelled Morrow to pay. But the rehearsal of the conversation between the plaintiff and Morrow on the ranch was not necessarily offered for that purpose. We must remember that Anderson had been appointed the agent for the bank to effect the sale. For that purpose he represented the bank and was authorized to enter into negotiations and receive an offer. Declarations of Morrow to Anderson were in effect declarations to the bank, because made to an agent having authority for that purpose. They stand on precisely the same basis as statements made by Morrow directly to the bank through its managing officers. An authority directly in point is *McDonald* v. *Smith,* 99 Minn. 42 (108 N. W. 291). See, also, *Obenauer* v. *Solomon,* 151 Mich. 570 (115 N. W. 696); *Smith* v. *Lyons Salt Co.* (Mo. App.), 177 S. W. 1057; *Luhn* v. *Fordtran,* 53 Tex. Civ. App. 148 (115 S. W. 667); *Fordtran* v. *Stowers,* 52 Tex. Civ. App. 226 (113 S. W. 631). Of course, the ultimate fact to be proved in the absence of securing a binding contract is that at the time the seller and the proposed purchaser were brought together, the latter was ready, able and willing to buy the land on the terms prescribed in the offer, or in this instance in the contract of agency. Manifestly, what Morrow said directly to the bank at that time was admissible in evidence. Indeed, the conversation in the meeting at the bank was had with agents of that institution, to wit, the directors. The declarations made to the other agent, namely, the plaintiff, commissioned as he was under his contract of agency, are of the same quality. In determining the ultimate question of whether Morrow was ready, able and willing to buy at the time he came in contact with the

directors of the bank, the weight to be given to his declarations to Anderson is for the jury to determine. The evidence was competent to go to the jury in the effort to establish the second of the two alternatives mentioned, namely, to produce a purchaser who was ready, able and willing to buy. The jury should be instructed that this testimony is limited to that purpose, for it is incompetent to prove a binding contract upon which either the seller or the purchaser could sue the other. On the other hand, if there were no negotiations between the broker and the proposed purchaser, the former would not have done anything towards securing a buyer for the land. The negotiations between the broker and the purchaser must be carried to the stage where the latter is produced to the seller and is then ready, willing and able to buy on the terms offered; and it is with that end in view that the conversation between Anderson and Morrow on the ranch, when reported to the bank by the latter, was admissible in evidence.

10. Several exceptions are predicated upon the offer of the defendants to show that at a meeting of the board of directors of the bank, held in the absence of and without the knowledge of either Morrow or Anderson, some of the directors were in favor of taking even less than the amount of their claims against the land. This was not shown to have been communicated to either Morrow or Anderson. The court rightly denied the admission of such evidence. It was clearly self-serving and consequently inadmissible.

11. Over the exception of the defendants the court gave to the jury this instruction:

"You are instructed that, if you find from the evidence that plaintiff, Edwin A. Anderson, negotiated with W. J. Morrow for the purchase of the lands

described in plaintiff's complaint, and that as a result of such negotiations, the said W. J. Morrow expressed to the defendants, or either of them his willingness and readiness to purchase said lands under the terms and conditions of the contract between plaintiff and defendants, and if you further find from the evidence, that the said Morrow was able to make the payments provided for in said contract, the plaintiff is entitled to recover from the defendants, notwithstanding the fact that the purchase was never 'consummated,' if you find also from the evidence that the failure to 'consummate' said purchase and sale was due to the refusal to perform said contract on the part of the defendants, or either of them, or to dilatory or evasive acts on the part of the defendants or either of them, or to attempts on the part of the defendants, or either of them, to deal with said Morrow on other terms than those named in the contract in suit.''

While ''expression of his willingness and readiness'' may be evidence to go to the jury on the ultimate fact that he was indeed willing and ready, it is only evidence and no more, and not even then conclusive. The charge quoted invaded the province of the jury in that it gave decisive effect to that expression, or, in other words, made the defendant liable because Morrow merely said he was ready and willing, when in fact he may not have been so. As against this expression of readiness or willingness to pay the required amount in cash, the jury was entitled to consider that he made no tender, did not demand a deed, and about June 20th, some three weeks later, offered only $24,000 for the land. The jury had a right to consider that Morrow's conduct spoke louder than his words, and that although in words he indicated he was ready, able and willing, yet in fact he was not. This instruction would exclude these circumstances and render the defendants conclusively

liable upon his bare expression of willingness and ability to pay.

12, 13. Another exception was taken to a charge which in substance excludes from the jury's consideration anything about what the services of Anderson were reasonably worth, and upon the stipulation of the parties told it in substance that if Anderson was entitled to recover at all, he should recover $8,025.03 with interest at the rate of 6 per cent per annum from May 29, 1916, to the date of the verdict. This was based upon the stipulation of the parties appearing in the record, although under the case of *Sargent* v. *American Bank & Trust Co.,* 80 Or. 16 (154 Pac. 759, 156 Pac. 431), interest is not recoverable in such a case. Having followed the stipulation, the instruction in that respect is harmless. At the most it is an instance of invited error.

14. Exception was taken to the following charge:

"I further instruct you that it is incumbent upon the plaintiff in this action to prove that he found and produced a purchaser who was ready, willing and able to purchase said lands and premises upon the terms offered by the defendants herein, in their contract with the plaintiff, Anderson; and I further instruct you that, if you find from the evidence in the case that the said plaintiff did produce a purchaser, who was ready and willing to purchase the land upon the terms named, and if you further find from the evidence, that the said defendants, on or about the said twenty-ninth day of May, 1916, sought to induce said purchaser not to make said purchase at that time, or if you find that the said defendants, or any of them, by and through their officers or agents, or either of them, represented to said purchaser, that they would sell and transfer the said lands and premises to the said purchaser after the first day of June, 1916, upon terms other than those named in the Anderson contract, or upon any terms, then the court instructs you, that in that event, the defendants would

be deemed to have accepted the said purchaser's ability to pay as satisfactory.''

This instruction was misleading. The contract required payment in cash, and the mere fact that the defendants were willing to deal with Morrow at some other time and on some other terms does not necessarily imply an admission that on May 30th he had the ability to pay cash for the full amount of the purchase price.

15, 16. Again, the defendants excepted to this instruction:

''The court instructs you that it is incumbent upon the plaintiff in this case to show by a preponderance of the evidence, that Morrow was able to pay for the lands in the manner provided for in the contract between plaintiff and defendants; this does not mean that he must have had the cash with him at the time he was negotiating for said lands, but if you find from all of the evidence, that the said Morrow had money in the bank, or had arrangements with a bank at the time he was negotiating for said lands, whereby his check would be honored for an amount sufficient to 'consummate' said deal, then you should find that the said Morrow was able to purchase the land in accordance with the said contract between plaintiff and defendants.''

This gives conclusive effect to the evidence about Morrow's having money in the bank or arrangements with some bank to honor his checks. It invades the province of the jury and is misleading, as indicating that the defendants would be bound to take his checks on the bank as cash, without reference to whether the bank was solvent or not. As said in 11 C. J. 24, a cash sale is ''one for ready money, as distinguished from one on credit; a sale conditioned on payment concurrent with delivery and not a sale on credit; one where delivery and payment are to be concurrent

acts and are to be performed at the same instant of time; a completion of the transaction by the execution of a conveyance and the payment of the consideration at the same time, ending and closing the matter by one process; a sale for the money in hand.'' Again, 30 Cyc. 1187, says:

''Payment can be made other than in money, if the contract so provides or the creditor consents thereto or acquiesces therein, but not otherwise.''

The text elaborates the doctrine that payment in cash means payment in money, unless the parties agree to some other medium of payment. Taken in connection with the excerpt from *Smith* v. *Lewis,* *supra,* it is profitable to read the amplification of the doctrine by Mr. Justice EAKIN in *Catlin* v. *Jones,* *supra,* to the effect that in transactions of this kind it is sufficient to take them to the jury, if it be shown by the evidence that the purchaser was so situated that he could promptly produce the cash to complete the transaction. It is not enough that he has property out of which the money could be made: *Waters* v. *Dancey,* 23 S. D. 481 (122 N. W. 430, 139 Am. St. Rep. 1071); *Dent* v. *Powell,* 93 Iowa, 711 (61 N. W. 1043). It is required that he be able simultaneously with the delivery of the deed to pay the money. Such transactions are not done in the twinkling of an eye. The defendants should have time to write their deed and execute it. The purchaser should be able with similar promptness to furnish the money, and for the consummation of the transaction it is required that it be cash.

17–19. The court rejected an instruction asked for by the defendants in this form:

''If Morrow asked defendants to 'carry' a part of the amount owing to them; in other words, if he

asked of them that they take only a part of what was owing to them and to wait a time for the balance of it, and even if defendants were willing to wait for a part of the money owing to them, still this was not a compliance with the terms of the contract and does not show that Morrow was ready, able and willing to purchase upon the terms specified in the contract.''

There was evidence in the record to the effect that some negotiations were had between Morrow and the bank about extending credit to him in case he purchased. This was sufficient to justify this request. It is well supported by authority that in presenting the law of a case to the jury the court must instruct on the law applicable to all theories of the case that are supported by any competent evidence: *Lewis* v. *Craft, supra.* It appears in the record that the plaintiff was denied the right to show by Morrow why the latter did not purchase the land. Morrow would be entitled to testify to any breach of the contract or refusal to perform the same by the defendants as a reason why he did not purchase the land, because they should be charged by such a reason. His own whim or caprice or unwillingness for which the defendants were not responsible would not be material here. Allusion to this is made in order that controversy on that point may not occur at a future trial.

For the reasons indicated, the judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

McBRIDE and HARRIS, JJ., concur in the result.