Argued and submitted at Pendleton May 6,
affirmed as modified July 21, 1980

SPAULDING, et ux,
*Respondents,*

*v.*

McCAIGE, et ux,
*Respondents,*
*and*
PROKSEL, et ux,
*Appellants.*

(No. E-7170, CA 14177)

614 P2d 594

Paul J. Rask, Portland, argued the cause for appellants. With him on the briefs were Richard A. Carlson and Law Offices of Paul J. Rask, P.C., Portland.

Milo Pope, Mt. Vernon, argued the cause for respondents Spaulding. With him on the brief was Kilpatricks & Pope, Mt. Vernon.

Robert L. Nash, Bend, argued the cause for respondents Proksel. With him on the brief was Panner, Johnson, Marceau, Karnopp, Kennedy and Nash, Bend.

Before Schwab, Chief Judge, and Gillette, Warden and Warren, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

This suit for the specific performance of a contract to sell real property resulted in a decree in favor of the plaintiffs-buyers and a separate judgment requiring defendants Proksel to indemnify defendants McCaige for their litigation expenses. Defendants Proksel appeal.

This three-sided dispute is the result of two separate contracts to sell the same piece of property. The first contract, dated April 10, 1977, is between plaintiffs and defendants McCaige. It is an agreement by defendants McCaige to sell and plaintiffs to buy approximately 33 acres for $33,000. The agreement recites that $1,000 was paid on the date of its execution and requires the buyer to deposit the balance of $32,000 in escrow on or before August 30, 1977. It requires the seller "following performance by the buyer at the time and in the manner herein mentioned" to deliver a "proper deed with usual covenants for conveying to buyer marketable title." The agreement states: "This transaction is subject to approval by the Grant County Planning Commission."

Things did not go smoothly with the performance of this agreement. As required by the agreement, defendants McCaige, as sellers, obtained a preliminary title report dated August 11, 1977. It showed the property to be heavily encumbered by various mortgages and liens. The title report raised questions about whether and when the sellers would be able to convey marketable title. Plaintiffs and sellers McCaige discussed these matters several times, consistently with a view toward proceeding with the sale. Plaintiffs' deposit of $32,000 into escrow was not made until sometime after September 6, 1977.[1] For reasons that do not appear in the record, the required Planning Commission approval was not obtained until April of 1978.

---

[1] The trial court found that the deposit was made "on" September 6. That is the date on a transmittal letter from the Department of Veterans Affairs to the escrow agent. Thus, contrary to the trial court's finding, the actual deposit into escrow may have been after September 6.

The second relevant contract, dated May 11, 1978, is between defendants McCaige and defendants Proksel. In that agreement the McCaiges and the Proksels compromised and adjusted numerous claims that they had against each other — claims unrelated to the agreement between plaintiffs and the McCaiges. As part of that larger transaction, the McCaiges conveyed to the Proksels the 33 acres that was the subject of the contract to sell between plaintiffs and the McCaiges. The Proksels agreed "to perform [that contract] to the extent that McCaiges would be required to perform [that contract]." The Proksels also agreed they would "hold McCaiges harmless from all liability, including litigation expenses, which may arise regarding" the 1977 contract between plaintiffs and the McCaiges.

The net effect of these two contracts is that, under the 1978 contract, defendants Proksel assumed the rights and duties that defendants McCaige had under the 1977 contract with plaintiffs. Defendants Proksel must thus perform the 1977 contract to the extent that defendants McCaige would have to. When defendants Proksel refused voluntarily to perform the 1977 contract, plaintiffs initiated this suit for specific performance.

## I

Defendants Proksel argue that neither the original sellers (the McCaiges) nor themselves as successors in interest have any duty to perform the 1977 contract with plaintiffs. First, they contend that plaintiffs breached a "time is of the essence" clause when they made a late deposit of the purchase price into escrow. Second, they argue the 1977 contract had lapsed due to passage of time. Third, they suggest that performance of the 1977 contract would be illegal under the Subdivision Control Law.

## A

Defendants Proksel repeatedly invoke "time is of the essence" as if that were some talismanic

[132]

phrase. However, the actual language in the 1977 agreement is: "Time is of the essence on this agreement, but Broker may without notice extend for a period not to exceed 30 days the time for the performance of any act hereunder." Although there was no broker involved in the transaction, this language suggests that the parties contemplated that deadlines were subject to being extended up to 30 days. Plaintiffs' deposit of the purchase price into escrow some time after September 6 was almost certainly within 30 days of the August 30 deadline specified in the contract.

Furthermore, the entire structure of the transaction indicates that the parties could not possibly have placed much importance on deadlines, regardless of the language in the printed form they used. All parties knew it would take defendants McCaige time to remove encumbrances in order to be able to deliver marketable title. All parties knew it would take time to obtain Planning Commission approval. There is no evidence about how long the parties thought these matters might take at the time they entered into the 1977 contract, but the leisurely pace at which they proceeded over the following months is inconsistent with the present claim of defendants Proksel that there was any urgency about when the parties performed their respective obligations.

■ Another way to view the situation would be under the doctrine of prospective inability. The exact extent of the encumbrances on the property in question first became known when the preliminary title report, dated August 11, was delivered. The encumbrances were numerous and varied. At that point plaintiffs could have had reasonable doubts about the ability of defendants McCaige to deliver marketable title, and thus would have been entitled to withhold their own performances. *See,* Restatement, Contracts § 284 (1932); *Guillory v. Dussin Investment,* 272 Or 267, 536 P2d 501 (1975).

Finally, there is the issue of waiver. Some time after the 1977 agreement to sell between plaintiffs and defendants McCaige, plaintiffs entered into possession of the property in question with at least McCaiges' knowledge and apparently with their consent. Defendants McCaige testified at trial that at all times they wanted to complete the sale and were working toward that goal. Plaintiffs testified at trial that at all times they wanted to complete the sale. In January, 1978 — the required Planning Commission approval not having yet been obtained — defendants McCaige consented to plaintiffs' withdrawal of the $32,000 purchase price from escrow, which had been held in escrow since the prior September. The apparent understanding or agreement of the parties at that time was that plaintiffs would again deposit the purchase price in escrow once the required Planning Commission approval was obtained.

■■ Any time limit in any contract can be waived by the parties either expressly or impliedly. *Widing et al v. Jensen, Real Estate Com.,* 231 Or 541, 547, 373 P2d 661 (1962). Plaintiffs and defendants McCaige at least impliedly waived any applicable time limit by repeatedly recognizing the continuing vitality of their 1977 contract and consistently working toward completing their transaction.

Defendants Proksel complain that plaintiffs did not plead waiver. Plaintiffs did raise the waiver issue when they moved for summary judgment. Most of the evidence of waiver was admitted without objection. There was no possibility of surprise.

For all of these reasons we conclude that plaintiffs are entitled to specific performance despite their possibly tardy deposit of the purchase price into escrow.

### B

The contract between plaintiffs and defendants McCaige was made in April, 1977. The contract

[134]

between defendants Proksel and defendants McCaige was made in May, 1978. Defendants Proksel contend that the duties of defendants McCaige under the 1977 contract had "lapsed" due to passage of time *before* defendants Proksel assumed those duties in the 1978 contract. Defendants Proksel cite no authority in support of this argument, and it is difficult to follow.

Defendants Proksel are possibly relying on the doctrine that, when no time for performance of a contract is specified in the contract, courts will imply a "reasonable time" term. We could easily imply such a term into the contract here in question but would still confront the fact that what is reasonable depends upon the circumstances of the parties and the subject matter. We are certain that plaintiffs and defendants McCaige anticipated there would be *some* delay when they executed their 1977 agreement — delay necessary in order for defendants McCaige to be able to deliver marketable title and delay necessary in order for the parties to obtain Planning Commission approval.

There is no evidentiary basis for any conclusion about *how much* delay the parties anticipated — other than the rather telling fact that during the following year plaintiffs and defendants McCaige were content to plod toward performance. Defendants Proksel argue: "Certainly neither party contemplated that the earnest money agreement would still be binding for another year beyond the date that the agreement required the balance of the purchase price to be deposited in escrow." Defendants Proksel obviously believe this with fervor. However, we find no basis in this record for joining them in their belief.

C

Defendants Proksel argue they need not perform because defendants McCaige, whose duties they have assumed, could not perform because conveyance from the McCaiges to the plaintiffs was prohibited by the Subdivision Control Law. Although defendants

Proksel do not expressly so contend, they are apparently invoking the law applicable to illegal contracts. We note that defendants Proksel are in a particularly unattractive position in arguing to a court of equity that the promised conveyance from the McCaiges to plaintiffs would be illegal, given that defendants Proksel have themselves taken a conveyance of the same property from the McCaiges. If the promised conveyance was illegal, the completed conveyance was likewise illegal.

Although the need to comply with the Subdivision Control Law is ultimately a question of law, that legal question has to be answered based on the facts of a given situation. We find the record confusing and conflicting on the relevant facts. The parties' act of originally conditioning the sale on Planning Commission approval was based in part on the belief that subdivision approval was required. At that time county officials were also taking the position that subdivision approval was required. By the time of trial, however, the County Planning Director testified that subdivision approval was not required. There is some support for this latter position in *State v. Emmich,* 34 Or App 945, 580 P2d 570 (1978).

We cannot tell on this record whether subdivision approval was or was not required. Assuming defendants Proksel have standing and sufficiently clean hands to rely on lack of approval despite having taken a conveyance of the subject property themselves, they had the burden of proving the facts necessary to show that approval was required. We conclude they did not do so.

## II

The remaining issues concern awards of costs made by the trial court in favor of plaintiffs and defendants *McCaige*. These issues fall into two groups: (A) the trial court required defendants Proksel to pay the out-of-pocket costs incurred by plaintiffs and

defendants McCaige in appearing for a scheduled trial date because the trial had to be postponed due to the nonappearance of defendants Proksel; (B) the trial court required defendants Proksel to pay costs and attorney fees incurred by defendants McCaige in connection with the entire trial court proceedings pursuant to the provision of the Proksel-McCaige agreement that the Proksels would "hold McCaiges harmless from all liability, including litigation expenses, which may arise regarding" the contract between plaintiffs and the McCaiges.

A

Trial proceedings were scheduled to begin at 8:30 a.m. on February 23, 1979 in Canyon City. Plaintiffs appeared in person and by counsel at that time, and witnesses they had subpoenaed appeared. Defendants McCaige appeared by counsel at that time. Defendants Proksel, who live in the Portland area, and their attorneys, who practice in Portland, did not appear.

Proksels and their attorneys had planned to fly by chartered plane from Portland to John Day early in the morning of February 23. On the eve of their scheduled departure, the pilot determined that weather conditions would not permit the flight. Proksels' attorneys notified the trial court of their predicament by telephone. The court's first reaction was to wait and see if the flight could be made at a later hour. The attorneys for plaintiffs and defendants McCaige were kept waiting in court to learn if the trial could possibly begin that day. Weather conditions, however, worsened and Proksels' attorneys again telephoned the trial court to report that it would not be possible to fly to eastern Oregon that day.

At that point the trial court's choices were to default the Proksels or to postpone the trial. The court went on the record and stated:

"* * * I told [Proksels' attorneys] on the telephone that I was probably postponing the case, and I was

seriously considering allowing the people who did appear their out-of-pocket costs on this. I am still inclined to do that. I suppose the fair thing would be for you gentlemen [the attorneys present] to file a motion and an affidavit summarizing the situation and setting out your costs * * *. They'll have an opportunity to respond * * *."

Within the next few days, plaintiffs filed a motion for out-of-pocket costs of $1,304.12 and defendants McCaige filed a motion for out-of-pocket costs of $201.

The case was tried on March 2 and 7. At the conclusion of the March 7 proceedings, the trial court noted that the question of costs occasioned by the postponement from February 23 was still pending. There was some discussion of that issue at that time, but it was ultimately decided to set it for hearing on March 20. Before that hearing defendants Proksel filed an affidavit in opposition to the other parties' motions for costs. It did not challenge the court's authority to award the costs in question. It did not specifically challenge any item of costs claimed by the other parties. It merely argued that awarding the costs claimed would be inequitable; e.g., "We could not predict nor control the weather that prevented our flight to John Day that morning."

The record on appeal does not include a transcript of the March 20 arguments on the motions for costs.

The trial court's decree awarded plaintiffs judgment against defendants Proksel for $1,304.12 — the amount of costs plaintiffs had claimed. The decree also awarded defendants McCaige judgment against defendants Proksel for $373. This was more than the original claim of defendants McCaige for $201. The record contains no explanation of the difference. In any event, for different reasons set forth below we reduce this award.

Defendants Proksel challenge the authority of the court to award the other parties their out-of-pocket

[138]

costs incurred because of the postponement of the trial. At times defendants Proksel seem to suggest that the trial court could have continued the trial on the express condition that they pay costs, but did not do so. We think what the trial court did — announcing it was "inclined" to require the nonappearing party to pay the costs of the appearing parties, but reserving a final ruling until the parties had an opportunity to present written and oral arguments on the issue — was the functional equivalent of a continuance conditioned on the requirement that certain costs be paid.

It is far from clear whether Oregon trial courts have authority to grant a continuance upon the condition that the moving party pay the expenses of his adversary. In a case factually similar to this one, the Supreme Court seems to have unequivocally recognized such authority:

> "* * * The fact that defendants had subpoenaed certain witnesses and had incurred thereby some expenses was not sufficient in itself alone to justify the court in refusing a continuance. The court could have provided for the reimbursement of such expense to defendants by imposing terms upon the plaintiff and this, we think, it should have done. * * *" *Baker v. Jensen et al,* 135 Or 669, 677, 295 P 467 (1931).

Also, such authority could be implied from *Reed v. First Nat. Bank of Gardiner,* 194 Or 45, 54, 241 P2d 109 (1952), which held it was "entirely reasonable and proper" to grant a continuance upon the condition that the moving party file an amended pleading within a set time. *See also, Pacific Mill Co. v. Inman,* 50 Or 22, 26, 90 P 1099 (1907).

None of these cases cited or considered statutes in effect when they were decided — statutes that create some doubt about the Supreme Court's holdings. ORS 20.110, in effect since 1862, provides in part: "Upon an application to postpone a trial, the payment to the adverse party of a sum, not exceeding $10, as costs may be imposed by the court as a condition of granting the postponement * * *." Former ORS

17.050, in effect from 1862 to 1979, when it was repealed upon the adoption of the Oregon Rules of Civil Procedure (ORCP), provided in part:

> "A motion to postpone a trial on the ground of the absence of evidence shall only be made upon affidavit showing the materiality of the evidence expected to be obtained, what diligence has been used to procure it, and the name and residence of the witness or witnesses. * * * The court, when it allows the motion, may impose such conditions or terms upon the moving party as may be just."

No Oregon appellate decision ever considered whether imposition of "conditions or terms * * * as may be just" included authority to condition postponement upon the moving party paying his adversary's expenses, although such broad statutory language would seem to include that authority. No Oregon appellate decision ever considered whether the authority created by former ORS 17.050, whatever its scope, was limited to situations where the postponement was due to absence of evidence, or whether that authority extended to situations like this where the postponement was due to nonattendance of a party; or, if the authority created by former ORS 17.050 was limited just to one possible reason for postponement, what the rationale of the limitation was. No Oregon appellate decision ever considered the interrelationship between former ORS 17.050 and ORS 20.110, which contains the $10 limit.

Former ORS 17.050 was replaced by ORCP 52 which provides in part:

> "A. Postponement. When a cause is set and called for trial, it shall be tried or dismissed, unless good cause is shown for a postponement. The court may in a proper case, and upon terms, reset the same.

> "B. Absence of evidence. If a motion is made for postponement on the grounds of absence of evidence, the court may require the moving party to submit an affidavit stating the evidence which the moving party expects to obtain. * * * The court, when it allows the motion, may impose such conditions or terms upon the moving party as may be just."

[140]

The last sentence of ORCP 52 B is the same as the last sentence of former ORS 17.050; so the law continues to recognize that postponement due to lack of evidence can be conditioned on just terms, which we assume includes the possibility of requiring the moving party to pay his adversary's expenses. The last sentence of ORCP 52 A is new. The authority it creates to reset a case "upon terms" appears to be a more general statement of the substance of the last sentence of ORCP 52 B but, unlike ORCP 52 B, is not linked to any particular reason for postponement.

These cases and statutes present a riddle. Should we follow express holdings like that in *Baker v. Jensen, supra,* and disregard the statutes? Or should we apply the statutes and attempt to interpret former ORS 17.050 and attempt to reconcile it with ORS 20.110? Or should we consider whether adoption of ORCP 52 is an implied repeal of the antiquated $10 limitation of ORS 20.110?

■ We conclude it is not necessary in this case to attempt to unravel the strands of this riddle. If the trial court exceeded its authority by ordering defendants Proksel to pay the expenses of plaintiffs and defendants McCaige when the trial was postponed, it would only be because of the $10 limitation of ORS 20.110. In this court defendants Proksel so argue. However, defendants Proksel did not make that contention in the trial court. Instead, the presentation of defendants Proksel to the trial court seems to have assumed that the court had authority to order payment of all of the expenses of plaintiffs and defendants McCaige; that presentation was only that it would not be reasonable or equitable to do so. Not having raised ORS 20.110 in the trial court, defendants Proksel cannot rely on it in this court. *Portland Machinery Co. v. Sistig,* 283 Or 249, 583 P2d 536 (1978).

■ Defendants Proksel also press their contention that as a factual matter it was unreasonable and inequitable to require them to pay the expenses of the

[141]

parties who did appear for trial on February 23. Defendants Proksel contend their "non-appearance on February 23rd was due to circumstances totally beyond their control." We think this misses the point. Plaintiffs expended money to subpoena witnesses who appeared for the trial scheduled to be held on February 23 and were liable to their attorneys for the time they spent in court on February 23 waiting for the scheduled trial to start. Defendants McCaige were liable to their attorney for the time he spent in court on that date and his travel expenses to get to the court. The question is whether it is more equitable that defendants Proksel — regardless of the reason for their nonappearance — reimburse the appearing parties for these expenses, or whether it is more equitable to require plaintiffs and defendants McCaige to absorb these extra expenses caused by the postponement of the trial. We agree with the trial court's assessment of the equities.[2]

### B

In addition to the $373 in costs awarded to defendants McCaige because of the postponed trial, at the conclusion of all the proceedings the trial court ordered defendants Proksel to pay defendants McCaige an additional $1,825.79. Defendants McCaige claimed these amounts as litigation expenses they were entitled to under the terms of their agreement with the Proksels that the Proksels would "hold McCaiges harmless from all liability, including litigation expenses, which may arise regarding" the contract between plaintiffs and defendants McCaige. The question is whether it was reasonably necessary for the McCaiges to incur any of the claimed litigation expenses. *See, St. Paul Fire & Marine v. Crosetti Brothers, Inc.,* 256 Or 576, 475 P2d 69 (1970).

[2] Although we do not think the issue is whether defendants Proksel were at "fault" for their nonappearance on February 23, we wish to make it clear that we do not agree they were the victim of circumstances completely beyond their control. A litigant or attorney who attempts to fly to eastern Oregon in February on the day of a scheduled trial is, to say the least, taking a calculated risk.

The McCaiges were named as defendants in plaintiffs' complaint for specific performance. At that point, it was reasonable for them to consult counsel even though they had previously conveyed their interest in the disputed property to the Proksels.

On the McCaiges' behalf, their attorney prepared and filed an answer and cross-complaint against the Proksels. Relying on the hold-harmless provision of the McCaige-Proksel agreement, the McCaiges' cross-complaint prayed for "judgment against Proksel for any damages awarded against McCAIGES and for McCAIGES' expenses incurred herein." On October 12, 1978, defendants Proksel filed an answer to the cross-complaint of defendants McCaige. The answer stated in part: "* * * Defendants WILLIAM and LUCEILLE PROKSEL accept the tender of the McCAIGES' defense and agree to hold Defendants JOHN and BARBARA McCAIGE harmless in the event judgment is rendered against them herein."

■ As of the date this answer was filed, defendants McCaige had incurred $157.15 in litigation expenses (attorney fees and filing fee for their answer). We hold defendants McCaige are entitled to be reimbursed this amount by defendants Proksel pursuant to the Proksels' promise to hold the McCaiges harmless from litigation expenses. There undoubtedly were simpler and less expensive ways for the McCaiges to tender their defense to the Proksels. But we cannot say the device they used — a cross-complaint against the Proksels which prompted the Proksels' judicial admission of their duty to defend the McCaiges — was beyond the bounds of reasonable prudence.

Once defendants McCaige received the October 12 answer of defendants Proksel, it is difficult to understand why defendants McCaige believed they had any continued interest in this suit, much less an interest sufficient to warrant incurring an additional $2,041.64 in litigation expense. Defendants McCaige

did not then own or claim any interest in the real property in dispute. Defendants McCaige had received the assurance that defendants Proksel would defend them and hold them harmless from any resulting judgment. The only remaining dispute was between plaintiffs and defendants Proksel.

In awarding defendants McCaige all of their litigation expenses, the trial court reasoned: "The fact that the defense had been tendered to another party or that an indemnity agreement had been entered into would not prevent a prudent litigant from employing counsel to monitor the course of litigation in order that his rights would be fully protected." Abstractly, there is some merit to this analysis. But as applied to the present case and on the present record, we simply cannot fathom what rights or interests of defendants McCaige needed to be protected by independent counsel after defendants Proksel filed their October 12 answer.

We conclude that only the litigation expenses incurred by defendants McCaige before October 12 were reasonable. Therefore, the decree and judgment are affirmed in all respects except that the awards to defendants McCaige in the decree and judgment totaling $2198.79 are reduced to $157.15.

Affirmed as modified.