In re FASZER BROS. & SONS, INC., an Oregon corporation, Debtor.

Dale M. CAMERON and Sandra L. Cameron, Plaintiffs,

v.

FASZER BROS. & SONS, INC., an Oregon corporation, Defendant.

Bankruptcy No. 682–07744.
Adv. No. 683–6025.

United States Bankruptcy Court, D. Oregon.

Sept. 29, 1983.

John E. Davis, Grants Pass, Or., for plaintiffs.

Daniel D. Phillips, Grants Pass, Or., for defendant.

## MEMORANDUM OPINION

C.E. LUCKEY, Bankruptcy Judge.

Defendant was in the business of development of subdivisions for home sites in or near Grants Pass, Oregon, and offered pre-designed homes which the defendant would propose to build for lot purchasers. The subdivision in question was platted as Meadow Glen Subdivision, consisting of Blocks A, B and C. In Blocks B and C there were lots numbered 11. The lot numbered 11 in Block C contained a square footage approximately twice that of the other lots in the plat.

Plaintiffs became interested in purchasing the large lot in the fall of 1982. On the subdivision a sign indicated sales were being made by Morrison Realty.

Plaintiffs contacted Mr. Cantle, a salesman in the Morrison office, and inquired if the lot involved was for sale. Mr. Cantle made inquiry of Mr. McQueen in the same office concerning availability of the lot who represented that he was authorized by the defendant to execute earnest money agreements on defendant's behalf for the sale of such lots. Mr. McQueen testified that he contacted by telephone the defendant's office and received word that the lot indicated was for sale for the $16,000.00 for which the other lots were offered.

A document titled "Sale Agreement & Receipt for Earnest Money" was therefore prepared and signed by Dale M. Cameron

and Sandra L. Cameron as purchasers and Faszer Bros. and Sons by Ernie McQueen as seller.

The earnest money document was dated October 21, 1982, and described the property only as Lot 11 Meadow Glen Subdivision. The block was omitted. However, from the testimony there was never any question in the minds of the parties to the transaction which lot 11 was intended. The selling price was listed at $16,000.00 with $100.00 receipted for with $1,900.00 additional earnest money to be paid, leaving a balance of $14,000.00 to be paid at closing, the date of which was specified as on or before November 10, 1982. The document obligated the buyer to "apply for loan thru Evergreen Fed Savings Grants Pass" not later than November 5, 1982. The transaction was "subject to buyer obtaining above loan."

Evergreen Federal Savings and Loan Association held an encumbrance on the subdivision lots but had an agreement with the defendant for release of a lot with a specified reduction of the obligation related to lot sales, and had proposed financing the buyers of lots.

On July 29, 1982, the defendant had filed a petition under Chapter 11 of the Bankruptcy Code, and Evergreen declined to grant financing to the plaintiffs also expressing concern through its representative, that the double sized lot was being sold for the price of the smaller lots.

Because he was unable to obtain the financing indicated in the earnest money, Mr. Cameron contacted Mr. Cantle who encouraged him to find other financing but no formal extension of the closing had been agreed upon. Mr. Cameron applied to Southern Oregon Federal Credit Union for financing on November 12, 1982, and received $8,000.00 from the credit union on November 21, 1982.

The additional $1,900.00 earnest money payment had not been made by Cameron. He "assumed" that was to be paid after financing was obtained.

Even though upon learning of the pending transaction, the defendant advised Can-·

tle that there had been an error made by one of their office personnel relating to the price of the large lot, and they would expect to be bound by the earnest money only if its terms and closing date be strictly adhered to, Cantle's salesman propensities caused him to continue to try to complete the sale. As a result Mr. Cameron contacted Josephine County Title Company to set up an escrow on November 24, 1982, but none was set up and on December 13, 1982, Mr. and Mrs. Cameron attempted to set up an escrow with closing instructions which was never signed by defendant as seller. The escrow was never completed because the title company was provided a copy of a letter from the defendant to Morrison Realty dated December 7, 1982, advising that the defendant considered the earnest money to be null and void due to the November 10, 1982, closing date not met.

It is clear that no one authorized to do so ever extended the time for closing the transaction.

Plaintiffs urge that the plaintiffs should be excused from meeting the closing deadline because of the defendant's inability to give clear title by that time.

The earnest money document contains a "time is of the essence" provision. Such clauses may be unenforced when the evidence indicates the parties have not relied upon or by conduct extended it, or executed extensions.

The case of *Spaulding v. McCaige*, 47 Or.App. 129, 614 P.2d 594 (1980) is one in which the court found the parties did not intend to place importance on the deadline. See page 133, 614 P.2d 594 of the opinion.

The plaintiff further urged that their failure to make timely deposit for closing should be excused because the defendant could not comply with the requirement to give clear title at that time.

However, the encumbrance to Evergreen was subject to a June 2, 1982, agreement to release individual lots for reduction of the obligation by an amount which could have been accomplished from the proceeds of the proposed sale. See *Guillory Corporation v.*

*Dussin Investment Co.,* 272 Or. 267, 536 P.2d 501 at 505 (Or.1975).

The evidence indicates that by the time of the closing date the plaintiffs were aware of the position of the defendant that no extension was to be offered although plaintiffs were encouraged by Mr. Cantle to try to continue to get financing with a hope that the transaction could be put together when he had no authority to grant an extension.

There is no course of conduct by the defendant to support implied extension of the closing date. There is no showing that the plaintiffs on the closing date performed or were in position to perform their payment obligation incident to closing.

■ As the Oregon Supreme Court said in *Huszar v. Certified Realty Company,* 266 Or. 614, 512 P.2d 982 at 984 (1973):

"Ordinarily, of course, a party to a contract who complains that the other party has breached the terms of a contract must prove performance of the contract on his own part, or a valid tender of performance rejected by the other party. *Anderson v. Wallowa National Bank,* 100 Or. 679, 689, 198 P. 560 (1921)."

The court in the *Huszar* case further notes at 512 P.2d page 985:

"Since the early decision of this court in *Guthrie v. Thompson supra* the established law in such cases has been stated in that case (1 Or. [353] at 355) as follows:

'And, generally where either party to such a contract seeks to enforce it by suit, he must first put the other party in default—the vendor, by making and tendering the deed, and the vendee, by tendering the price and demanding a deed—which deed in contract like the one sued on, the vendor should have a reasonable time to prepare after demand'. . . . "

■ In summary, the Court finds that the defendant's agents authorized a sale of the lot in question, but that the defendant was entitled to and did require strict compliance with the terms of the agreement despite the unauthorized encouragement of the salesman Cantle to the plaintiffs to continue to seek financing, which did not give rise to an extension. The Court further finds that at the time agreed upon for closing the plaintiffs could not make the payment required and therefore could not and did not first put the defendant in default.

The plaintiffs are therefore not entitled to a decree requiring performance of the agreement which expired by its terms, and defendant is entitled to a decree that plaintiffs have no interest in the defendant's real property.

The Earnest Money Contract provides: "If suit or action is filed on this contract, the party not prevailing agrees to pay the prevailing parties [sic] reasonable attorney fees which shall be fixed by the court or courts in which the suit or action, including any appeal therein is tried, heard or decided."

This Court finds that the defendant as prevailing party in the suit filed by the plaintiffs is entitled to judgment for costs to be taxed pursuant to Bankruptcy Rule 7054, together with reasonable attorney fees in the amount of $500.00.

This Memorandum Opinion contains the Court's Findings of Fact and Conclusions of Law and pursuant to Bankruptcy Rule 7052 they will not be separately stated.

Separate Decree and Judgment consistent herewith will be entered.